# 23-1234

## United States Court of Appeals
## for the Second Circuit



DANIEL BANYAL,

*Plaintiff-Appellant,*

-against-

TOWN OF PAWLET, JUDGE THOMAS S. DURKIN,

*Defendants-Appellants,*

John And Jane Doe 1 through 20, whose identities are unknown at present,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VERMONT(Burlington)

## BRIEF FOR PLAINTIFF-APPELLANT

LAW OFFICE OF JOSEPH INDUSI, PLLC
JOSEPH INDUSI
*Attorneys for Plaintiff-Appellant*
400 Townline Road, Suite 100
Hauppauge, NY 11788
(631) 921-7464
*joe@josephindusilaw.com*

[REPRODUCED ON RECYCLED PAPER]

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ *iii*

PRELIMINARY STATEMENT ....................................................................1

JURISDICTIONAL STATEMENT ...............................................................3

STATEMENT OF THE ISSUES....................................................................3

STATEMENT OF THE CASE........................................................................4

    A. Factual Background ...........................................................................5

        1. Cast of Characters .....................................................................5

        2. The 2018 Permit .........................................................................6

        3. The Town's Zoning Enforcement Action ...............................11

        4. Post-Judgement Motion for Contempt and Fines ...................12

        5. Manufactured Claims of "Armed Extremism" .......................15

        6. Evidence of Selective Treatment ............................................19

SUMMARY OF THE ARGUMENT ...........................................................21

STANDARD OF REVIEW ........................................................................23

    I.      Rule 12(b)(1) .............................................................................23

    II.     Rule 12(b)(6) .............................................................................24

    III.    Rule 15(a) ..................................................................................25

ARGUMENT ................................................................................26

I.    The District Court Erred in Denying Appellant Leave to Amend Based on the Rooker-Feldman Doctrine ................................................................27

      A. Appellant's Constitutional Claims Were Not Finally Resolved Prior to the Commencement of His §1983 Action ...........................................29

      B. The State Court Judgments Were Not the Source of Appellant's Injuries .................................................................31

II.   The District Court Erred Denying Appellant Leave to Amend Under Vermont Claim Preclusion Law ...............................................36

III.  Alternatively, Even if Claim Preclusion Applies to Any of the Appellant's §1983 Claims, V.R.P. 60(b) Allows Appellant to Evade the Preclusive Effect of Res Judicata Upon Evidence of Misconduct or Any Other Reason Justifying Relief ...................................................47

      A. Rule 60(b) Constitutes Substantive State Law that the District Court was Required to Apply When Evaluating the Merits of a Rule 12(b)(6) Motion on Grounds of Vermont's Claim Preclusion Law........47

      B. Res Judicata Does Not Preclude Actions Under Rule 60(b)...................50

IV.   The District Court Erred by Concluding Appellant Conceded his Motion to Amend Would Have No Bearing on the Town's Motion to Dismiss...............................................................................52

CONCLUSION .......................................................................54

CERTIFICATION PURSUANT TO Fed. R. App. P. 32(a)(7)(B) and (C) ...........55

# TABLE OF AUTHORITIES

***Cases***         ***Page(s)***

*Argentina v. Emery World Wide Delivery Corp.*,
   167 F.R.D. 359 (E.D.N.Y. 1996) ........................................................47

*ASARCO Inc. v. Kadish*,
   480 U.S. 605, 612 (1989) ................................................................29

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ..............23, 24, 25

*Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*,
   1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) ...........................25

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) ...............................................................24

*Clubside, Inc. v. Valentin*,
   468 F.3d 144, 159 (2d Cir. 2006) ......................................................39

*Cody v. Estate of Cody*,
   134 Vt. 113, 114 (1976).............................................................50, 51

*de novo. Balintulo v. Ford Motor Co.*,
   796 F.3d 160, 164 (2d Cir. 2015) ....................................................23

*Demarest v. Town of Underhill*,
   2021 Vt 14, ¶ 13...........................................................................37

*Demarest v. Town of Underhill, No. 22- 956*,
   2022 WL 17481817, at *2 (2d Cir. Dec. 7, 2022)...........................36

*Dorce v. City of New York, 2 F.4th 82*,
   104 (2d Cir. 2021)..........................................................................31

*Erie R. Co. v. Tompkins*,
   304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)............................47

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp*.,
544 U.S. 280, 283–84 (2005)................................................................27, 28, 34

*Famous Horse Inc. v. 5th Ave. Photo Inc*.,
624 F.3d 106, 108 (2d Cir.2010) ....................................................................24, 25

*Faulkner v. Caledonia Cnty. Fair Ass'n*,
178 Vt 51, 56 (2004)................................................................................37

*Foman v. Davis*,
371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)...........................................53

*FSK Drug Corp. v. Perales*,
960 F.2d 6, 10 (2d Cir.1992) ..........................................................................38

*Grundstein v. Vt. Bd. of Bar Examiners, No. 21-1549*,
2022 WL 1669459, at *1 (2d Cir. May 26, 2022)......................................36, 37

*Hanna v. Plumer*,
380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965) ...................47, 48

*Heck v. Humphrey*,
512 U.S. 477, 480 n.2 (1994)..........................................................................36

*Hinsdale v. Vill. of Essex Junction*,
153 Vt. 618, 625 (1990)............................................................................41, 42

*Hoblock v. Albany Cnty. Bd. of Elections*,
422 F.3d 77 (2d Cir. 2005) ............................................................................33

*Hunter v. McMahon, No. 21 1473*,
2023 WL 4671281, at 4 (2d Cir. July 21, 2023)..................................27, 29, 31

*Iannarone v. Limoggio*,
190 Vt. 272, 279 (2011)................................................................................36

*In re Burns 12 Weston St. NOV*,
2022 VT 37, ¶ 13 ............................................................................................36

*In re Laberge Moto-Cross Track*,
2011 VT 1, 189 Vt. 578, 15 A.3d 590 (2011) ..................................................34

*In re St. Mary's Church Cell Tower,*
    180 Vt. 638, 638 (2006)......................................................36

*Jenn-Air Prods. v. Penn Ventilator, Inc.,*
    283 F. Supp. 591, 594 (E.D. Pa. 1968)............................25

*Leather v. Eyck,*
    180 F.3d 420 (2d Cir. 1999) ..............................................46

*Littlefield v. Town of Colchester,*
    150 Vt. 249, 250 (1988)......................................................44

*Lombardi v. Whitman,*
    485 F.3d 73, 81 (2d Cir. 2007) ..........................................39

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ............................23

*Makarova v. United States,*
    201 F.3d 110, 113 (2d Cir.2000) ......................................23

*McKithen v. Brown,*
    481 F.3d 89 at 97 (2d Cir. 2007) ............................27, 28, 31

*Migra v. Warren City School Dist. Bd. of Education,*
    465 U.S. 75,81 (1984).........................................................36

*Mothershed v. Justs. Of the Sup. Ct.,*
    410 F.3d 602, 604 n.1 (9th Cir. 2005) .............................29

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022)................22, 39, 40, 42, 43

*Pappas v. Philip Morris, Inc.,*
    915 F.3d 889, 894 (2d Cir. 2019) ......................................47

*Pasternack v. Shrader,*
    863 F.3d 162, 174 (2d Cir. 2017) ......................................26

*Peter F. Gaito Architecture. LLC v. Simone Dev. Corp.,*
    602 F.3d 57, 64 (2d Cir.2010) ...........................................25

*v*

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc*.,
   507 F.3d 117, 121 (2d Cir.2007) ........................................................................25

*Sacerdote v. N.Y. Univ*.,
   9 F.4th 95, 115 (2d Cir. 2021) ...................................................................25, 26

*Selevan v. N.Y. Thruway Auth*.,
   584 F.3d 82, 88 (2d Cir. 2009) .........................................................................23

*Steffel v. Thompson*,
   415 U.S. 452, 472–473, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974) .............45

*United States v. Quintieri*,
   306 F.3d 1217, 1230 (2d Cir. 2002) ..................................................................43

*Vossbrinck v. Accredited Home 10 Lenders, Inc*.,
   773 F.3d 423, 426 (2d Cir. 2014) .....................................................................27

***Statutes/Regulations/Miscellaneous***

24 V.S.A. § 4413(d)(1) ...........................................................................................34

24 V.S.A. § 4472............................................................................................40, 44

24 V.S.A. § 4472(a) ...............................................................................................41

24 V.S.A. § 4472(b)................................................................................40, 41, 42, 43

28 U.S.C. § 1291 ......................................................................................................3

28 U.S.C. § 1331......................................................................................................3

28 U.S.C. § 1738....................................................................................................36

4 V.S.A. § 31..........................................................................................................45

4 V.S.A. § 34....................................................................................................41, 45

42 U.S.C. §1983...............................................................................................*passim*

42 U.S.C. §1988.......................................................................................................4

Civil Procedure 12(b)(1) ....................................................................................4, 23

Civil Procedure 12(b)(6) ............................................................4, 23, 24, 47, 50

Vermont Rule of Civil Procedure 60(b) ...........................................................*passim*

§ 7:4. Procedural considerations—Exhaustion of remedies—Prior to civil rights
   action, 2 Zoning & Plan. Deskbook § 7:4 (2d ed.) ...........................................45

## PRELIMINARY STATEMENT

Appellant, Daniel Banyai ("Appellant") was selectively targeted for zoning enforcement because of personal disputes with his neighbors – individuals who simultaneously served as government officials in the Town of Pawlet (the "Town"). These individuals were charged with or otherwise held significant influence over the Town's zoning enforcement decisions and commenced a zoning enforcement proceeding against Appellant for improper purposes in violation of Appellant's Fourteenth Amendment protections against selective enforcement, violations of substantive due process, and the Second Amendment.

Appellant purchased the property underlying this dispute in 2013. The property, which exceeds 30 acres, is extensively wooded, undeveloped, rural land, and is located primarily in the Agriculture Rural Residential district of Pawlet, just outside of a slate quarry. Appellant sought to develop a portion of his property into a gun range and firearms education and training school known as "Slate Ridge." Appellant's desired use for his property is not unique in Pawlet. For example, another resident has operated an unpermitted gun range on her property for years without interference from the Town. However, due to Appellant's affair with the wife of a board member's brother, and political animus toward his perceived "extremist beliefs," these members caused the Town to commence a zoning

1

enforcement proceeding against him under the pretext of stopping "militant extremism."

In furtherance of their intent to punish Appellant through discriminatory enforcement of the zoning regulations, these same Town officials and their allies in the media falsely characterized Appellant as an "insurrectionist" intending to engage in armed violence. Appellant's dispute with the Town was eventually picked up by the national media. In a story published by the New York Times, Town Select Board Member Jessica Van Oort made it a point to directly connect Appellant to "the threat of armed insurrection" and suggested Appellant may eventually resort to violence. These false allegations of "dangerousness" and "violence" caused the Vermont governor and legislature to publicly support the Town's "any means necessary" approach to prevent the operation of Slate Ridge. The outcry over the "threat of violent confrontation" and "militant extremism" disguised the Town's actual dispute with Appellant and further encouraged the courts to acquiesce in the Town's aggressive acts of enforcement without hesitation due to fears of violence.

As it stands today, the Town has improperly caused the Appellant to suffer significant penalties in the form of six figure fines and the prospect of immediate arrest and incarceration over structures he recently demolished. In its attempts to punish Appellant for the private disputes with its members, the Town has violated Appellant's constitutional rights.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this action under 28 U.S.C. §1331. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because the District Court entered judgment dismissing the action on August 7, 2023, and Appellant filed a timely notice of appeal on September 5, 2023.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred denying Appellant leave to amend on grounds of futility based upon the *Rooker-Feldman* doctrine when Appellant's constitutional claims were not finally resolved prior to the commencement of his §1983 action, and the state court judgements were not the source of his injuries.

2. Whether the District Court erred denying the Appellant leave to amend the complaint on the grounds of futility when his constitutional claims were not barred under Vermont claim preclusion law.

3. Whether the District Court erred denying the Appellant leave to amend the complaint on grounds of futility when Appellant properly alleged claims pursuant to Vt. R. Civ. P. 60(b), a state substantive law that allows a litigant to evade the preclusive effect of res judicata and obtain relief from a final judgement or order.

## STATEMENT OF THE CASE

Appellant initiated this action seeking relief under 42 U.S.C. §1983 and 42 U.S. §1988 for the violation of his civil rights protected by the Second and Fourteenth Amendments of the United States Constitution.[1] See JA-1 Complaint. On June 12, 2023, Defendant, the Town of Pawlet (the "Town") moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) under the *Rooker-Feldman* doctrine and *Younger* abstention and Rule 12(b)(6) under *res judicata*. See JA-15 Motion to Dismiss for Lack of Jurisdiction.[2] After opposing the Town's motion (see JA-16 Response in Opposition to Motion to Dismiss for Lack of Jurisdiction), on July 14, 2023, Appellant also filed a motion to amend his complaint. See JA-17 Appellant's Motion to Amend the Complaint Pursuant to Rule 15(a) and Incorporated Memorandum of Law ("Motion to Amend"). On August 7, 2023, the District Court issued an opinion granting the Town's motion to dismiss and denying the Motion to Amend. See JA-22 Opinion and Order. The District Court entered judgment for the Town on August 7, 2023. See JA-23 Judgment. Appellant timely appealed.

---

[1] References to the Joint Appendix are designated "JA" followed by the appendix number and document referenced, e.g. for references to the Complaint the designation is "JA-1 Complaint."

[2] Defendant Judge Thomas S. Durkin was also named in this action and moved to dismiss the complaint. Appellant does not contest nor appeal dismissal of Judge Durkin based upon the doctrine of judicial immunity.

## A. Factual Background

### 1. Cast of Characters

Appellee Town of Pawlet (the "Town") commenced a zoning enforcement proceeding against Appellant Daniel Banyai ("Appellant") relating to his operation of a gun range on his property located at 541 Briar Hill Road, Pawlet, Vermont 05761 (the "Property"). The Town's enforcement action is unlike any other action taken by the Town to enforce its zoning laws. JA-17 Motion to Amend, Ex. A at 5. The Town's zoning enforcement decisions were made at the direction of the Appellant's neighbors who simultaneously held positions of authority within the Town government. *Id.* These members were motivated by, among other reasons, an intent to maliciously injure the Appellant.

The relevant neighbors and members of the Town include, but are not limited to:

- Richard "Dick" Hulett Sr. (now deceased). Dick Hulett served as a Pawlet Select Board Member for 24 years. Dick Hulett's more than two decades worth of government service for the Town enabled the Hulett family to develop close ties with various Town officials and residents. The Hulett family are known as community minded people who do a lot for the Town, including making monetary donations. As a result of their status in the community, "things usually go their way." Dick Hulett previously owned the property known as 541 Briar Hill Road, Pawlet, Vermont 05761 (the "Property"). The Property also neighbors the Hulett family's property.

- Bruce Hulett is the son of Dick Hulett. His ex-wife, Rebecca Hulett, is currently married to Appellant. It is believed that Rebecca Hulett had an affair with the Appellant while she was still married to Bruce Hulett.

- Rich Hulett is the son of Dick Hulett and brother of Bruce Hulett. He is currently a Pawlet Select Board Member. He is the owner of R. Hulett Trucking, Inc., a local business that employs other Pawlet residents and government officials. Rich Hulett owns the property neighboring the Property.

- Ray Duquette and Mandy Mosher-Duquette, husband and wife, own property neighboring Appellant. They both serve on Pawlet's Board of Civil Authority. Like the Huletts, the Duquettes are a prominent family in Pawlet with a strong influence over Pawlet politics.

- John Davis and Valerie Davis, husband and wife, own property neighboring Appellant. Valerie Davis is the former postmaster for the Town.

- Bob Jones is a Pawlet Select Board Member and a strong ally to the Huletts. Bob Jones "runs" R. Hulett Trucking, Inc. as an employee of Rich Hulett. Bob Jones is known to vote along with Rich Hulett on Select Board matters.

- Jessica Van Oort is a Pawlet Select Board Member. She is an outspoken anti-gun critic and is one of the many individuals responsible for pushing false "armed insurrectionist" narratives against Appellant.

*Id.* at 5-6.

Due to their personal animus toward Appellant, these individuals and others used their power and influence in the community to cause a zoning enforcement proceeding to commence against Appellant. *Id.*

## 2. The 2018 Permit

The Property exceeds 30 acres, is extensively wooded, undeveloped, rural land, and is located primarily in the Agriculture Rural Residential district of Pawlet, just outside of a slate quarry. *Id*.  The Property is landlocked and is accessed through

a 30-foot wide right of way across an adjoining parcel owned by the Huletts. *Id.* The Property was originally owned by Richard "Dick" Hulett. *Id.* Dick Hulett later sold it to one of his workers, Mike Mullin, but reserved himself a right of first refusal. *Id.* On July 14, 2013, Appellant purchased the Property from Mike Mullin after he successfully outbid Dick Hulett for the land. The Hulett family was reportedly very angry when they lost control of the Property to Appellant. *Id.*

Appellant planned to construct a shooting range for firearms education and training on the Property.  *Id.* at 7. In furtherance of this goal, Appellant created two outdoor shooting ranges. *Id.* The shooting ranges consisted of standalone targets, earthen berms, and one range which contained covered shooting benches and a façade. *Id.* In or around 2017, Appellant hosted a few training and shooting events at the Property under the name "Slate Ridge." Appellant did not request or collect money for these events. *Id.*

Sometime in 2017, Appellant undertook preliminary steps to construct a small, one room building that totaled approximately 500 square feet (the "School Building"). *Id.* Eric Mach, then the Zoning Administrator for the Town ("ZA Mach"), came to the Property to view Appellant's construction of the School Building for his shooting range. *Id.* ZA Mach directed Appellant to fill out a zoning application for a "school," an allowed by-right use in the zoning district, to come into compliance with local zoning regulations. *Id.*

7

At ZA Mach's direction, on or about December 5, 2017, Appellant filed a permit application requesting approval for a "school" structure and change of use of property from "land" to "school." *Id.* On January 2, 2018, ZA Mach denied Appellant's permit application because the Property's 30-foot access right of way did not meet the Town's 50-foot right of way requirement for landlocked parcels adopted in 2011 ("January 2018 Denial"). *Id.* However, since the Property's 30-foot right of way existed before the change in law, it qualified as a pre-existing non-conforming lot under Vermont law. *Id.* at 8. ZA Mach erroneously directed Appellant to apply to the Town of Pawlet Development Review Board ("DRB") for a variance from the right of way requirement. *Id.* In reliance on the instructions given to him by ZA Mach, Appellant submitted his variance application to the DRB on April 1, 2018. *Id.*

During this time, news of Appellant's affair with Rebecca Hulett spread throughout the community. This affair, coupled with their frustration that Appellant outbid them for the Property, motivated the Huletts to seek retribution against him. *Id.* at 15. The Duquettes, and other neighboring properties loyal to the Huletts, also despised Appellant because of his perceived political beliefs. *Id.* In a local board meeting, Ray Duquette urged the Select Board to "google" Appellant and "see what kind of individual they were dealing with." *Id.* He also spoke openly how he "hates

that mother[expletive]" and would mockingly refer to Appellant as a "gunslinger." *Id.*

Bruce Hulett, Rich Hulett, Ray Duquette, Mandy Mosher-Duquette, John Davis, Valerie Davis and other currently unidentified Town officials and individuals, formed the "Briar Hill/Warren Switch Group," a group whose stated goal was to oppose Appellant. *Id.* at 16. The Briar Hill/Warren Switch Group quickly used their influence within the community and positions of power as members in the Town government to illicitly weaponize the Town against Appellant through enforcement of zoning regulations. *Id.* at 4. Due to their influence and authority, the Town agreed "to get rid of [Appellant] by beating him in court, confiscating and selling his property, and using the proceeds to pay the legal fees." *Id.*

On April 25, 2018, the DRB held a hearing on Appellant's variance application. *Id.* at 8. At the hearing, Appellant's neighbors, including Town officials, such as the Huletts and Duquettes, and others vigorously opposed his variance. *Id.* The DRB ruled that the Property qualified as a pre-existing non-conforming lot and advised Appellant to submit a new application for his permit. *Id.* at 9. His neighbors immediately appealed the DRB's decision to the Environmental Division. *Id.*

On May 29, 2018, ZA Mach sent Appellant a notice of violation advising Appellant that his construction of a building and use of the property without a permit violated the Town of Pawlet zoning regulations ("NOV1"). *Id.* Critically, NOV1

explicitly advised Appellant that he could submit a permit application within seven days to cure the violation. *Id.*

On June 4, 2018, Appellant timely submitted his application for a permit and paid the required fees. *Id*. ZA Mach promptly approved the application on the day of submission[3] and issued Appellant a permit for the School Building and use of the Property as a shooting/training school (the "2018 Permit"). *Id.*

A day later, on June 5, 2018, an anonymous letter was submitted to the "Members of the Select Board, ZBA, DRB and Planning Commission" by "concerned citizens of the Pawlet Community" in response to ZA Mach's approval of Appellant's application for a permit. *Id.* at 10. In the letter, these unnamed individuals threatened litigation to "[contest] the business use of multiple shooting ranges" and demanded that ZA Mach be immediately removed as zoning administrator. *Id.*

In reliance on the permit, Appellant finished the School Building. *Id*. Seven months later, the Environmental Division issued a decision on the neighbors' appeal. *Id*. The Environmental Division ruled, without addressing the 2018 Permit, or the directions given by the DRB, that Appellant's failure to appeal the January 2018 Denial precluded him from raising a pre-existing nonconforming parcel defense. *Id.* The Environmental Division remanded the matter to the DRB, directing them to

---

[3] This is standard procedure for the permitting process in Pawlet.

consider the merits of the variance but avoid consideration of the Property as a pre-existing nonconforming use. *Id.* On remand, the DRB, under immense pressure by the media and local opposition, predictably denied Appellant's variance application. *Id.*

After the variance was denied, the new Zoning Administrator, Hal Wilkins ("ZA Wilkins") issued another Notice of Violation on August 29, 2019 ("NOV2"). *Id.* at 10-11. NOV2 stated Appellant was in violation of the zoning laws for having "erected multiple structures" and for "operating a training facility/shooting school." *Id.* at 11. To cure the violation, Appellant was required to "eliminate the unpermitted uses on the property, remove all unpermitted buildings, and not allow unpermitted uses to resume on the property" within seven days. *Id.*

### 3. The Town's Zoning Enforcement Action

Days after NOV2 was issued, the Town filed an action in the Environmental Division to enforce NOV2. *Id*. The Town filed a summary judgment motion for, among other things, an order deeming NOV2 final and binding on Appellant. *Id*. The Environmental Division granted the Town's application in part, ruling Appellant's failure to appeal NOV2 rendered it final and binding under state law. *Id.* As a result, Appellant was precluded from contesting any of the violations in NOV2. The Environmental Division ordered an evidentiary hearing on all remaining issues. *Id.*

On March 5, 2021, the Environmental Division issued its Decision on the Merits and Judgment Order ("Judgment Order"). *Id.* at 12. The Judgement Order voided the 2018 Permit and ordered Appellant to remove all "buildings" on the Property that have not been authorized by a valid zoning permit. *Id*. Except for the School Building, the Judgement Order failed to identify the specific "buildings" Appellant was required to remove. *Id.* This sweeping declaration went well beyond the plain text and meaning of NOV2, which was expressly limited to "unpermitted uses…[and] buildings" relating to the "[operation of] a training facility/shooting school." *Id*.

The Judgement Order also permanently enjoined Appellant from operating a shooting range/school and from engaging in any firearms training related activities. *Id*. Under the plain text of the injunction, this encompasses even private, recreational shooting. *Id.* The injunction was ordered to be filed with the Town's land records and now binds subsequent property owners "by or through" Appellant. *Id.* at 11-12. As to penalties, the court imposed a $100 daily fine totaling $46,600.00 against Appellant. *Id*. at 12. The Judgment Order was upheld on appeal by the Vermont Supreme Court ("VSC") on January 14, 2022. *Id.*

### 4. Post-Judgement Motion for Contempt and Fines

Relying on the grant of authority provided by the Judgment Order, which extended NOV2 to include virtually all structures presently existing on Appellant's

property, the Town sought to compel Appellant to remove structures that were (a) separate from the operation of "a training facility/shooting school"; (b) erected after the date NOV2 was issued; and/or (c) exempt from zoning regulations under Vermont law, including the shooting ranges and "farming structures." *Id.* at 13.

This was particularly egregious since the Town targeted structures separate from NOV2 that were ultimately lawfully erected by Appellant. *Id.* Appellant had also abided by the injunction, ceased operation of Slate Ridge, and transitioned to farming. *Id.* Although Appellant's farming structures were never contemplated by NOV2, the Town now deemed them subject to NOV2 and demanded they all be deconstructed and removed. *Id.*

The Town's demands to deconstruct Appellant's farming structures was concerning because farming structures are entirely exempt from local zoning regulations. *Id.* at 13-14. However, the Environmental Division denied Appellant the benefit of raising the farm structure exemption, claiming it to be an impermissible collateral attack on NOV2. *Id.* at 14.

On February 8, 2023, in its Decision on Post-Judgment Motion for Contempt and Fines ("Post Judgment Decision"), the Environmental Division ordered Appellant, under the threat of imprisonment, to deconstruct and remove the School Building, shooting ranges, including the berm developments and façade, shipping

containers, stair/ladder/platforms, barn, animal run-in, and chicken coop by a date certain. *Id.*

The Environmental Division further ordered that if the Town finds any of the aforementioned structures existing within the time frame allotted, it will issue a writ of mittimus for the immediate imprisonment of Appellant. *Id.* Upon such event, the Town was granted the authority to enter the Property and complete the "deconstruction and removal of those structures, uses, and developments described above," and Appellant would remain imprisoned until all work was completed. *Id.* Fines would also continue to accrue at $200 per day until the Town's work was completed and the Town was entitled to recover, in addition to the accumulated fines, reasonable compensatory damages. *Id.*

On July 6, 2023, the Environmental Division granted the Town's application for Appellant's arrest and imposed fines against Appellant totaling $100,600, with such fine constituting a lien on the Property (the "Contempt Order"). *Id.* at 15.

The Contempt Order is currently on appeal before the VSC. The writ of mittimus for Appellant's arrest and incarceration, which formed part of the Contempt Order ("mittimus"), was never enforced by the local police and expired.

On July 28, 2023, Appellant submitted photographic evidence along with a sworn affidavit proving compliance with the Post Judgment Decision. On August

22, 2023, the Environmental Division denied the Appellant's motion finding it lacked jurisdiction due to his appeal to the VSC challenging the Contempt Order.

After receiving evidence that the structures were destroyed, on September 15, 2023, the Town filed a motion to extend and modify the mittimus. The Environmental Division set a briefing schedule on the Town's application and ordered the Town to file "a proposed Entry Order and Modified Arrest Mittimus, so that the Court may fully understand what action the Town is requesting that the Court take." On October 3, 2023, the Environmental Division denied the Town's application to extend and modify the mittimus, reiterating that Appellant's appeal divested the trial court of jurisdiction. On the same date, the Town filed another motion seeking to "extend" the mittimus. In response, the Environmental Division scheduled a video "motion hearing" on October 16, 2023.

At the hearing, the Environmental Division directed the Town to petition the VSC to obtain an order authorizing it to extend the mittimus. Following the court's direction, the Town filed a motion with the VSC asking it to grant its petition authorizing the Environmental Division to amend the mittimus to cause the Appellant's arrest. On November 9, 2023, the VSC granted the petition.

### 5. Manufactured Claims of "Armed Extremism"

Throughout the entire history of Appellant's dispute, officials for the Town, including those who formed the Briar Hill/Warren Switch Group, and other

"anonymous" sources, concocted a significant number of misleading and demonstrably false claims about the threat of Appellant's "armed extremism." *Id*. at 16. These false claims promoted by Town officials were specifically intended to justify the Town's aggressive zoning enforcement against Appellant and mobilize public support for their actions. *Id.*

The VT Digger, the purported "premier daily news organization in Vermont," which boasts a subscribership of 600,000 readers or approximately 90% of Vermont's population[4], has alone published more than 30 articles about the Appellant falsely accusing him of "armed extremism." *Id*. The VT Digger has been the most vocal opponent to Appellant. Not surprisingly, the Town Attorney's law partner, Rob Woolmington, is the Vice President of the Board of Trustees for The VT Digger. *Id*.

Every article published about the Appellant regarding his dispute with the Town recycles the same false "armed extremism" narrative, and purposely attempts to cause fears of armed conflict. *Id.* 16. Some egregious examples include the following:

- *The Deeper Dig: Slate Ridge and the prospect of political violence*. The caption under a photograph of individuals engaged in common firearms training reads: "Videos on the Slate Ridge Facebook page show visitors practicing military and law enforcement-style scenarios. Neighbors are concerned that men from the site will follow through on threats of violence." The article further links Appellant to the type of "domestic

---

[4] U.S. Census Bureau estimates as of July 1, 2022.

threat that will be most prominent for [the U.S.] to deal with in the next 10 years or so" and that Appellant's "far-right terrorism is the place that we're likely to see political violence."

- *Military Training Site Terrifies Neighbors in West Pawlet*. The author opens this article describing her secret meeting with a "group of locals" to discuss their "chilling experiences" with Appellant. The article falsely alleges that Appellant "and groups of men armed with large guns, have had confrontational exchanges with local residents many times over the past four years." It also alleges the following incident: "During the meeting, an unfamiliar truck sped into the backyard, several hundred yards from where the group had gathered. They didn't recognize the vehicle, and their fear was palpable as the truck turned and peeled away... [they] worried the driver could be [Appellant] or one of the men acting under his direction." Multiple paragraphs later, the article notes: "As it happens, the truck did not belong to [Appellant] … [but] a well-meaning teenage friend."

- *State's Response to Slate Ridge frustrates locals who, for years, have asked for help*. This article again falsely describes Appellant as a violent extremist, alleging residents "expressed concerns about the facility's zoning and permitting violations, along with a pattern of dangerous behavior exhibited by [Appellant], and his followers, many of whom belong to militia and anti-government groups." The articles notes "many of the neighbors own firearms themselves, and now rely on each other, instead of police, to respond when they believe a situation will turn dangerous. In a phone interview, neighbors described creating these plans with each other."

*Id.* at 16-17.

This American Life, a public radio podcast, conducted in-person interviews with many of the members of the Briar Hill/Warren Switch Group. *Id.* at 6. Some of the more notable claims include:

- "John Davis, the Vietnam vet, was tipped off about [Appellant's gun range] by a friend. John got in his truck and drove up and down the hill, knocking on doors to alert everyone. He [said] it was like Paul Revere's ride."

- "Mandy Hulett (Rich Hulett's wife) walked the property line around [Appellant's] place. They peered through the trees and saw some silhouette targets in dirt berms. Mandy worried that someone would end up shooting towards the road."

- "[The neighbors] started meeting in John Davis's workshop. Sometimes a couple dozen people would show up."

- Raymond Duquette and Beth Moser-Duquette detailed how they keep a Kevlar vest under their bedroom window and "have weapons hidden everywhere, just in case."

- In another exchange, Beth Moser-Duquette details her preparedness to deal with a fictionalized attack by Appellant: "My beautiful camouflage 243 I bought on a whim because it was pretty. It's got a high-powered scope. It's camouflaged pretty pink, because I'm a girl. And I've got 1, 2, 3, 4 5 clips of 243 bullets that are already locked and loaded. Two years ago, I would have never-- it only takes one bullet to kill a deer. Why do you think I have all these? To protect my family. And these are my family. My neighbors are my family. So [Appellant] has family, we have family, too."

- Another neighbor, the Tilanders, also detailed how they have "stockpiled weapons around their house, too. There's a loaded handgun in the cookie cabinet. The first thing Paul [Tilander] does every morning is search for a new post from Slate Ridge. When the Tilanders moved to Pawlet a decade ago, they planned a retirement of gardening and enjoying the views. Instead, Michelle [Tilander] looks out her kitchen window and imagines [Appellant] or his supporters creeping through the woods, lying down in hedgerow and aiming their guns into the house."

*Id.* at 17-18.

The national media, including the New York Times, eventually picked up the story. On February 23, 2021, Town Select Board Member Jessica Van Oort tweeted: "It's my New York Times debut! Seriously this is big news in our town and I'm glad it's now national new[s]." In the article, she makes it a point to directly connect

18

Appellant to "armed insurrection." *Id.* at 18. In the same story, a neighbor claimed that "the main reason [the state won't intervene] was that Vermont's law enforcement bodies, from the town level up to the state, were fearful of an armed confrontation." *Id.* at 2. A former Vermont state representative echoed this belief, having compared Appellant's zoning dispute with January 6. *Id.*

In response to the Judgement Order, Governor Phil Scott proclaimed its "good news" that the injunction was approved and its something "we've been advocating for." *Id.* These false allegations of "dangerousness" and "violence" lodged against Appellant caused the Vermont legislature to enact a "paramilitary training camp" ban. In support of the bill, Senate President Pro Tempore Phil Baruth claimed "Slate Ridge has become a problem for a while now." *Id.* at 2-3. Despite these claims, no violence, armed confrontations, or arrests ever occurred. *Id.* at 19.

## 6. Evidence of Selective Treatment

Historically, the Town has shown great flexibility toward zoning issues, allowing individuals to obtain permits and repurpose unpermitted or illegal structures on their property in exchange for payment of a civil fine. *Id.* The Town's enforcement of NOV2 against Appellant stands in stark contrast to its standards of enforcement against similarly situated residents. For example:

- The Town has failed to enforce zoning regulations against Debra Ross who operates an unpermitted shooting range on her property.

- The Town previously allowed Michael Beecher, a current Town official, to obtain a zoning permit after he illegally constructed a 1440 square foot commercial garage and studio apartment, a 64 square foot chemical storage shed with two fuel storage tanks, and a 30 foot by 24 foot garage storage building on his property in exchange for payment of a civil fine totaling $4,875.00. He was given 450 days to pay the fine.

- The Town has failed to enforce zoning regulations against James Andrus who operates an unpermitted landscaping business out of his father's house, which is located in a residential zone. Notably, his father, Jim Andrus, was the Town's Fire Chief for 30 years.

- The Town has failed to enforce zoning regulations against Kenny Noble who operates an unpermitted automotive repair shop out of a single-family residence.

- The Town has failed to enforce zoning regulations against Select Board Member Rich Hulett who likely does not have a permit to operate R. Hulett Trucking, Inc. on his late father Dick Hulett's property.

- The Town has failed to enforce zoning regulations against Fred Stone who created an unpermitted ATV trail. Fred Stone previously served on the Select Board and worked for Rich Hulett.

- The Town has failed to enforce zoning regulations against Chris Ross who operates an unpermitted commercial trucking business on his property. Chris Ross has worked for Rich Hulett since August 2022.

- The Town has failed to enforce zoning regulations against Todd Sargent who built an unpermitted structure on his property that violates local setback requirements.

- The Town has failed to enforce zoning regulations against Jimmy Sheldon who failed to obtain a permit to construct a large yellow building along the river on his property.

- Nancy Morlino, the current Zoning Administrator for the Town, moved her home to a different location on her property. She also had a barn raised

off the ground. It is believed she did not obtain the proper permits before making these changes.

*Id.* at 19-21.

Unlike Appellant, the Town has not commenced an enforcement action against any of the foregoing individuals, despite the illegal nature of the structure and complaints from other residents. *Id.* at 21.

## SUMMARY OF THE ARGUMENT

Under the District Court's ruling, Appellant, who was subjected to the deprivation of his Second Amendment rights and Fourteenth Amendment rights to be free from selective enforcement and violations of substantive due process, is barred from obtaining damages and other equitable relief under §1983.

The District Court erred in dismissing Appellant's action and denying him leave to freely amend his complaint on the grounds of futility based upon *Rooker-Feldman* and Vermont claim preclusion law. The District Court erroneously concluded *Rooker-Feldman* barred Appellant's first three causes of action under the Fourteenth Amendment because the Appellant's §1983 claims were not finally decided nor could they have been fully litigated in the underlying state court proceeding which lacked the jurisdiction to decide or award damages for §1983 violations. Furthermore, the source of Appellant's injuries were not caused by the state court judgements but by the acts of the Town who intentionally targeted him for zoning enforcement for unconstitutional purposes.

The District Court further erred in determining all of Appellant's claims were barred under Vermont claim preclusion law because the operative facts and evidence supporting his constitutional claims are distinct from and irrelevant to the facts and evidence supporting the underlying state court judgements; and the Environmental Division did not have jurisdiction to decide or award damages for his §1983 claims, precluding him from raising these claims in the state court litigation. The District Court also erred denying Appellant's Second Amendment claim under claim preclusion because *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) constitutes an intervening change of controlling law that necessitates invalidating the Environmental Division's order and related zoning regulations restricting Appellant from engaging in any firearms training related activities on his property.

Alternatively, even if claim preclusion applies, the District Court erred in rejecting Vermont Rule of Civil Procedure 60(b) because the rule constitutes substantive state law that permitted Appellant to obtain relief from the underlying state court judgements on the grounds of the Town's unconstitutional conduct.

For these reasons, this Court should reverse the District Court's dismissal of this action and vacate its ruling denying Appellant the opportunity to amend his complaint.

## STANDARD OF REVIEW

This Court reviews decisions denying leave to amend based on futility *de novo. Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015). This Court also reviews decisions granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) *de novo*. See, e.g., *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009).

### I.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). The plaintiff bears the burden of establishing standing "in the same way as any other matter on which [it] bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Thus, to survive a Rule 12(b)(1) motion to dismiss, the plaintiff must allege facts that affirmatively and plausibly suggest that it has standing to sue. *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir.2009) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

"When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the

"Pleading"), the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) (internal citations omitted). "The task of the district court is to determine whether the Pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." On appeal, this Court reviews a "district court's decision on such a facial challenge de novo"… "accept [ing] as true all material [factual] allegations of the complaint," and "draw[ing] all reasonable inferences in favor of the plaintiff." *Id.* (international citations and quotations omitted)

## II. Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108

(2d Cir.2010). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 681, 129 S.Ct. 1937. The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir.2007). To decide the motion, the court "may consider facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture. LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir.2010) (internal quotation marks and citation omitted).

### III.   Rule 15(a)

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit." *Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc*., 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing *Jenn-Air Prods. v. Penn Ventilator, Inc*., 283 F. Supp. 591, 594 (E.D. Pa. 1968)). Rule 15(a)(2) is a "liberal" and "permissive" standard, and "the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, [or] futility." *Sacerdote v. N.Y.*

*Univ.,* 9 F.4th 95, 115 (2d Cir. 2021) (internal citations and quotations omitted). Further, it is improper for the Court to deny a motion to amend based solely on delay or expense "absent a showing of bad faith or undue prejudice." *Pasternack v. Shrader,* 863 F.3d 162, 174 (2d Cir. 2017). "[M]ere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.* (internal citations omitted).

## ARGUMENT

The District Court denied the Appellant's Motion to Amend on grounds of futility. See JA-22 Opinion and Order at 28. The District Court reasoned that Appellant's Motion to Amend was futile because his first three causes of action alleging selective enforcement and violations of substantive due process against the Town were barred under *Rooker-Feldman. Id.* Alternatively, even if Appellant's first three causes of action against the Town were not barred under *Rooker-Feldman,* the District Court reasoned Appellant's entire action was barred under Vermont claim preclusion law. *Id.*

For the reasons set forth below, Appellant's Motion to Amend was not futile and the District Court erred in denying Appellant leave to freely amend the complaint.

26

I.  **The District Court Erred in Denying Appellant Leave to Amend Based on the *Rooker-Feldman* Doctrine**

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home 10 Lenders, Inc*., 773 F.3d 423, 426 (2d Cir. 2014) citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 283–84 (2005)). The *Rooker-Feldman* doctrine rests on the principle that "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court." *Exxon Mobil*, 544 U.S. at 283.

The Supreme Court has made clear, however, that *Rooker-Feldman* occupies a "narrow ground" that applies in only "limited circumstances." *Exxon-Mobil*, 544 U.S. at 284, 291. In fact, "the Supreme Court has only applied the doctrine twice—in the two cases after which the doctrine was named." *McKithen v. Brown*, 481 F.3d 89 (2d Cir. 2007). As a result, application of the doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284. To ensure that courts "avoid extending *Rooker-Feldman* beyond the narrow circumstances in which it properly applies," *Hunter v. McMahon*, No. 21 1473, 2023 WL 4671281, at 4 (2d Cir. July 21, 2023), the Second Circuit applies a four-part test to assess application of the doctrine.

"From [the opinion in *Exxon Mobil*], we can see that there are four requirements for the application of *Rooker–Feldman*. First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain [ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment [ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive."

*McKithen v. Brown*, 481 F.3d 89 at 97 (2d Cir. 2007) (internal citations omitted).

The District Court reasoned that Appellant's first three causes of action for selective enforcement and violations of substantive due process were barred under *Rooker-Feldman* because (1) Appellant's constitutional claims were "finally resolved" in state court before he commenced his §1983 action; (2) his constitutional claims require the District Court to review and reject the state court judgements; and (3) Appellant's injuries were caused by the state court judgements.

As set forth below, Appellant's amended pleading affirmatively and plausibly establishes that his constitutional claims were not finally resolved before he commenced his §1983 action and the state court judgements were not the source of Appellant's injuries.

## A. Appellant's Constitutional Claims Were Not Finally Resolved Prior to the Commencement of His §1983 Action

This Court has explained that "state court proceedings must have either reached finality or yielded an order that satisfies 'the exceptions to the finality requirement'…[that] trigger the exclusive appellate jurisdiction of the Supreme Court." *Hunter v. McMahon,* No. 21-1743, 2023 WL 4671281 at 4 (2d Cir. July 21, 2023) quoting *ASARCO Inc. v. Kadish*, 480 U.S. 605, 612 (1989). In other words, "[p]roceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum." *Mothershed v. Justs. Of the Sup. Ct.,* 410 F.3d 602, 604 n.1 (9th Cir. 2005).

In its decision, the District Court reasoned that dismissal of the Appellant's Fourteenth Amendment claims was appropriate because the Appellant was "subject to several final state court judgments," which "were rendered against [him] before he filed suit in [the District Court]." See JA-22 Opinion and Order at 11-12. The District Court explained:

> "[Appellant] is subject to several final state-court judgments. [He] first lost… in the appeal of the DRB's finding that his property was a pre-existing non-conforming lot… [and the Environmental Division] held that the initial denial of [Appellant's] January 2018 permit application precluded him from raising the argument that his property was a pre-existing nonconforming lot… [Appellant] then lost in the Environmental Court after [the Town] filed an action to enforce NOV2. In the March 5, 2021 decision on the merits [the Environmental Division] entered a declaratory judgment in favor of the Town,

29

> voiding the June 2018 permit, ordering the removal of all
> "buildings".... and enjoining [Appellant] from operating
> a shooting school on his property... [which loss was
> affirmed on appeal]... Most recently, [Appellant]... lost in
> the Environmental Court during the Town's contempt
> proceedings against him after he refused to comply with
> the March 5 Order...Each of these final judgments were
> rendered against [Appellant] before he filed suit in this
> District."

*Id*.

However, the final judgements relied on by the District Court did not finally resolve or address the claims underlying Appellant's §1983 suit. The state court judgments involved questions relating to Vermont procedural and substantive law regarding the validity of the Environmental Division's decision revoking the 2018 Permit and the effect of NOV2 after his permit was revoked. None of these judgements involved or related to the facts supporting Appellant's §1983 claims, including allegations that the Town was motivated by and acted pursuant to an unconstitutional purpose prior to and during the state court litigations.

Furthermore, the Environmental Division lacked jurisdiction to even consider Appellant's §1983 claims. The Environmental Division is a court of limited jurisdiction whose subject matter is limited to (1) matters arising under 10 V.S.A. chapters 201 (Administrative Law Enforcement) and 220 (Consolidated Environmental Appeals); (2) matters arising under 24 V.S.A. chapter 61, subchapter 12 (Solid Waste Ordinances) and chapter 117 (Municipal and Regional Planning and

Development); and (3) the revocation of permits under 10 V.S.A. chapter 151 (State Land Use and Development Plans). The limited jurisdictional authority of the Environmental Division expressly precluded the court from deciding Appellant's §1983 claims and awarding damages. As a result, Appellant's §1983 claims could not have been raised or resolved in the Environmental Division.

Accordingly, the Appellant's §1983 claims were not finally resolved by the state court judgments.

## B. The State Court Judgments Were Not the Source of Appellant's Injuries

"*Rooker-Feldman* does not bar claims based on opponent's misconduct that *precedes* the state court proceeding, if the plaintiffs' alleged injuries were merely *ratified* by the state-court judgments rather than *caused* by them." *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) (internal quotation marks omitted and emphasis added). Thus, for *Rooker-Feldman* to jurisdictionally bar a case, there must be a "*causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *Hunter*, No. 21-1473, 2023 WL 4671281 at 7 quoting *McKithen*, 481 F.3d at 98.

Appellant's §1983 claims establish that the injuries sustained by him were caused by the Town's conduct, not the state court judgements. Appellant's first and

31

second claims for selective enforcement under the Equal Protection Clause[5] is rooted in the Town's misconduct that preceded commencement of the state court litigations. Appellant alleges that his neighbors, who also served as elected members of the Town, including Rich Hulett, Ray Duquette, Mandy Mosher-Duquette, and others, formed the "Briar Hill/Warren Switch Group." See JA-17 Motion to Amend, Ex. A at 16. The purpose of this group was to utilize their influence and authority within the Town government to weaponize the Town against the Appellant as retribution for his purchase of the Property, his affair with the wife of a Town official's brother, and political bias toward his perceived political beliefs. *Id.* at 6, 15-16. The Town made clear it was their intent to "get rid of [Appellant] by beating him in court, confiscating and selling his property, and using the proceeds to pay the legal fees." See *Id.* at 16. Under these claims, the injuries sustained by Appellant occurred when the Town agreed to selectively target Appellant for an improper purpose and thereafter, caused a zoning enforcement proceeding to commence against him in furtherance of such intent.

With respect to Appellant's third cause of action for a substantive due process violation, Appellant alleges that the Town outrageously targeted his protected property interests, e.g. shooting ranges and farming structures, for zoning

---

[5] Appellant's Second Cause of Action adopts a "Class-of-One" cause of action under the Equal Protection Clause. This claim is based on the favorable treatment of Debra Ross, who operates an unpermitted private shooting range on her property without intervention by the Town.

enforcement during the state court proceeding. See *Id.* at 13-14, 26. Similar to his selective enforcement claim, Appellant alleges the Town's decisions to target his protected property interests was part of its overall malicious strategy to deprive him of his constitutional rights. *Id.* Under this claim, the Appellant's injuries were sustained at the time the Town sought an order requiring removal of Appellant's protected property interests when Vermont law precluded such request and the Town had the sole discretion not to demand such relief from the court.

To the extent Appellant's substantive due process claim mirrors claims in the state court action, this alone does not justify dismissal under *Rooker-Feldman*. This Court has made clear that "[t]he applicability of the *Rooker–Feldman* doctrine turns not on the similarity between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." See *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005). Furthermore, the *Rooker–Feldman* doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," because "[i]f a federal plaintiff present[s] some independent claim [,i.e., a claim based on an injury that was not caused by the state-court judgment,] albeit one that denies a legal conclusion that a state court has reached in a case to which he was a

party ... then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 293, 125 S.Ct. 1517.

After NOV2 was rendered final and binding in the state court proceeding, Appellant raised defenses that the shooting ranges and farming structures were exempt from zoning regulations under applicable Vermont case law and statute. Appellant asserted that the shooting ranges constituted a de minimus use of private property that were not subject to zoning regulations. See *In re Scheiber*, 168 Vt. 534, 724 A.2d 475 (1998) (concluding the construction of an outdoor shooting range on private property that consisted of large earthen berms, targets, and other features, constituted a de minimus use of private property not subject to zoning regulations); see also, *In re Laberge Moto-Cross Track*, 2011 VT 1, 189 Vt. 578, 15 A.3d 590 (2011) (concluding a moto-cross track that consisted of a "three-to-four-foot-wide track [that] ran one half-mile" and was made by "fashioning a series of earthen jumps and berms using a small law-tractor to shift on-site excavation materials did not require a zoning permit.). For the farming structures, Appellant raised 24 V.S.A. § 4413(d)(1), which makes clear that farm structures are also exempt from zoning regulations. See 24 V.S.A. § 4413(d)(1) ("A bylaw under this chapter shall not regulate: (A) required agricultural practices, including the construction of farm

structures, as those practices are defined by the Secretary of Agriculture, Food and Market.").

The Environmental Division denied the defenses raised by Appellant as a collateral attack of NOV2, thereby enabling the Town to unilaterally determine the meaning of NOV2 and the means to achieve compliance. In other words, the Town retained absolute discretion to decide what structures the Appellant was required to deconstruct under NOV2. Motivated by its intent to harass and punish Appellant for his dispute with Town officials, e.g. affair with a Town official's brother's wife, and animus toward his purported extremist beliefs, the Town purposely sought to cause the deconstruction and removal of Appellant's protected property interests contrary to clearly defined law. While the Environmental Division surprisingly "ratified" and "acquiesced" in the Town's ultra vires methods of enforcement, the Appellant's injuries on this claim were directly caused by the Town's purposeful unconstitutional exercise of their discretion during the state court litigation. But for the Town's conduct, the Appellant's protected property interests would not have been subject to the underlying state court judgements.

For all the reasons set forth above, Appellant's claims under the Fourteenth Amendment directly allege that the injuries sustained by him were caused by the Town's misconduct, not the state court judgements, which "simply ratified, acquiesced in, or left unpunished" the Town's unconstitutional treatment of

Appellant. Accordingly, the District Court erred denying Appellant leave to amend his complaint pursuant to the *Rooker-Feldman* doctrine.

## II. The District Court Erred Denying Appellant Leave to Amend Under Vermont Claim Preclusion Law

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply Vermont claim preclusion law to Vermont state court judgments." *Demarest v. Town of Underhill*, No. 22- 956, 2022 WL 17481817, at *2 (2d Cir. Dec. 7, 2022); *see also Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75,81 (1984). "The res judicata effect of state-court decisions in § 1983 actions is a matter of state law." *Heck v. Humphrey*, 512 U.S. 477, 480 n.2 (1994) (internal citations omitted).

In Vermont, claim preclusion "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter, and causes of action are identical or substantially identical." *In re Burns 12 Weston St. NOV*, 2022 VT 37, ¶ 13. Claim preclusion bars litigation if "(1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding." *Iannarone v. Limoggio*, 190 Vt. 272, 279 (2011) (quoting *In re St. Mary's Church Cell Tower*, 180 Vt. 638, 638 (2006)). The doctrine "bars parties from relitigating, not only those claims and issues that were previously litigated, but also those that could have been litigated in a prior action." *Grundstein v. Vt. Bd. of*

*Bar Examiners*, No. 21-1549, 2022 WL 1669459, at *1 (2d Cir. May 26, 2022) (internal citations omitted).

This case involves several final judgments in on-going state court litigation with the Town. However, these final judgements are derived from separate questions of fact and law relating to the validity of the 2018 Permit revocation, finality of NOV2 after his permit was revoked, and Appellant's compliance with NOV2. The facts and legal contentions underlying the state court proceedings are entirely distinct from Appellant's §1983 claims. As a result, there are no final judgements existing on the merits of Appellant's §1983 claims.

Notwithstanding, even if the first two elements of claim preclusion are met, the District Court erred in concluding that the Appellant's claims could have been litigated in the prior state court proceedings. "Vermont applies a transactional test to determine if the subject matter and cause of action are the same in both cases." *Grundstein*, No. 21-1549, 2022 at *2 (2d Cir. May 26, 2022) (summary order) (citing *Faulkner v. Caledonia Cnty. Fair Ass'n*, 178 Vt 51, 56 (2004)). "The subject matter and causes of action are thus considered the same if the operative facts are the same." *Id.* The court considers "whether the same evidence will support both" causes of action, *Demarest v. Town of Underhill*, 2021 Vt 14, ¶ 13 (quoting *Faulkner*, 178 Vt. at 57) and "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to

the parties' expectations or business understand or usage," Restatement (Second) of Judgments § 24.

Appellant's selective treatment claims do not meet the transactional test because it involves separate questions of fact and law and requires different evidence than the evidence used to support the state court judgements. To establish a selective treatment claim, the Appellant must prove he was selectively treated as compared to others similarly situated and that such selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. See *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir.1992). The operative facts and evidence relevant to Appellant's selective treatment claims involves conduct that occurred *before* the state court actions, e.g. Appellant's dispute with the Huletts and the formation of the Briar Hill/Warren Switch Group, and *beyond* the state court actions, e.g. the Town's treatment of others similarly situated, such as Debra Ross. See JA-17 Motion to Amend, Ex. A at 20. On this claim, the only related evidence between the state court litigations and Appellant's §1983 action is the fact that a state court enforcement proceeding was commenced against Appellant by the Town. The remaining evidence used to support the underlying state court judgements, e.g. whether Appellant timely appealed the January 2018 Denial, is irrelevant to establishing his selective treatment claims.

Appellant's claim for a substantive due process violation also does not meet the transactional test. To establish a substantive due process violation, Appellant is required to prove he had a "federally protectable property right," *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006), and the Town's denial of such right was "outrageous and egregious under the circumstances." *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007). The operative facts and evidence relevant to establishing this claim also involves different evidence from that which was used to support the underlying state court judgements. The "outrageous" element will rely on facts that occurred primarily *before* the state court actions, e.g. Appellant's dispute with the Huletts and the formation of the Briar Hill/Warren Switch Group caused the Town to deprive Appellant of his protected property rights. Similar to his selective treatment claim, the only related evidence between the two actions is the fact that the Town sought an order to deprive him of protected property interests and actually caused a deprivation of those interests. While the intent to deprive Appellant of these interests came to fruition during the state court litigations, this intent, which is relevant to his substantive due process violation, was irrelevant to the Environmental Division's reasoning ratifying the Town's desire to target these protected interests.

Appellant's claim under the Second Amendment also does not meet the transactional test because it involves different evidence and the application of a new legal standard established by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142

S. Ct. 2111, 213 L. Ed. 2d 387 (2022). In *Bruen,* the Supreme Court held the "government must [prove the constitutionality of] its regulation [of the Second Amendment] by demonstrating that [the regulation] is consistent with the Nation's historical tradition of firearm regulation." *Id.* Under the newly adopted text and history standard, the courts must find whether the Nation's historical tradition of firearm regulation supports the Environmental Division's permanent injunction restraining all firearms training related activities on the property and applicable zoning regulations restricting such use. *Bruen* therefore requires an entirely different factual and legal analysis from the facts and laws upon which the state court judgements were decided. Specifically, whether there is evidence of a historical tradition prohibiting shooting relating training activities on 30 acres of rural and heavily wooded private property.

Furthermore, Appellant could not have fully litigated his selective treatment and substantive due process claims in the state court since his claims did not relate to the constitutionality of a bylaw as applied to him. The District Court erroneously concluded that the Appellant could have litigated his claims in the Environmental Division because such "constitutional questions are within the purview" of the court under 24 V.S.A. 4472. JA-22 Opinion and Order at 23-24. However, a plain reading of the text of the statute makes clear that V.S.A. 4472(b) only applies to claims relating to the constitutionality of "any bylaw or municipal plan." See V.S.A.

4472(b) ("[t]he remedy of an interested person with respect to the *constitutionality of any one or more of the provisions of any bylaw or municipal plan* shall be governed by the Vermont Rules of Civil Procedure with a de novo trial in the Superior Court, *unless the issue arises in the context of another case under this chapter, in which instance it may be raised in the Environmental Division*."). V.S.A. 4472(b) addresses the constitutionality of the regulation itself as applied to the facts of the case – it does not address Appellant's claims which relates to the constitutionality of the Town's conduct separate from the provisions of the zoning bylaws.

In further support of this conclusion, the District Court erroneously relied on *Hinsdale v. Vill. of Essex Junction*, 153 Vt. 618, 625 (1990), as precedent for the Environmental Division's jurisdiction over Appellant's §1983 claims. As an initial matter, the jurisdiction of the Environmental Division was historically limited to "state-prosecuted environmental violations." Hon. Paul L. Reiber, *20th Anniversary of the Environmental Division of the Vermont Superior Court - A Celebration of Its Continuation and Success*, Vt. B.J., Winter 2011, at 20. Its jurisdiction of zoning appeals did not come into effect until well after *Hinsdale* was decided. Before expansion of the Environmental Division, V.S.A. 4472(a) required zoning appeals to be made to the superior court. See *Hinsdale*, 153 Vt. 618 at 625. Unlike the

Environmental Division, whose jurisdiction is expressly limited by 4 V.S.A. § 34, the superior court was empowered to hear and decide §1983 claims.

The facts at issue in *Hinsdale* are also distinguishable from Appellant's claims. In *Hinsdale,* the plaintiff argued that enforcement of the zoning ordinance denied him all practical use of his property and therefore the ordinance was unconstitutional as applied to him. The VSC denied this argument under V.S.A. 4472(b) because the plaintiff failed to raise this constitutional challenge *to the ordinance* in a timely appeal from the zoning board's decision. See *Hinsdale*, 153 Vt. 618 at 627. Unlike *Hinsdale*, the Appellant's §1983 claims under the Fourteenth Amendment are not a collateral attack on the constitutionality of an ordinance as applied to him. Appellant's constitutional claims relate to the Town's conduct independent from the constitutionality of the provisions of the bylaws themselves.

Appellant's Second Amendment claim is also not precluded under 24 V.S.A. 4472. 24 V.S.A. 4472(b) states "the remedy of an interested person with respect to the constitutionality of any one or more of the provisions of any bylaw… shall be governed by the Vermont Rules of Civil Procedure with a de novo trial in the Superior Court, *unless the issue arises in the context of another case* under this chapter, in which instance it may be raised in the Environmental Division." In this case, *Bruen* was decided *after* Appellant's permit for a shooting range was revoked and the Environmental Division issued a permanent injunction restraining him

42

from engaging in any firearms related training activities on his property. As a result, Appellant's constitutional claims "did not arise in the context" of the underlying state court proceeding and he is not foreclosed from appellate review under 24 V.S.A. 4472(b).

Alternatively, even if 24 V.S.A. 4472(b) is properly construed to bar Appellant's Second Amendment challenge, *Bruen* constitutes an intervening change of controlling law justifying the District Court's departure from this rule. In *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002) (internal citations and quotations omitted), this Court ruled "[e]ven if an issue is barred by the law of the case, appellate courts may depart from the law of the case and reconsider the issue for cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002) (internal citations and quotations omitted). In this case, *Bruen* directly affects the constitutionality of the state court judgements restricting Appellant's right to engage in any firearms training related activities on his property. As a result, the Appellant had standing to bring his Second Amendment claim in light of *Bruen's* effect on the constitutionality of these zoning restrictions. The District Court also had cogent and compelling reasons to depart from 24 V.S.A. 4472(b) because it is a manifest injustice to allow the deprivation of

constitutionally protected activity by the continued enforcement of an unconstitutional regulation or order.

The District Court further erred in determining that the Appellant's §1983 claims were precluded under *Littlefield v. Town of Colchester*, 150 Vt. 249, 250 (1988). In that case, the plaintiff voluntarily dismissed with prejudice his appeal of the denial of his subdivision application and thereafter commenced a §1983 action. The VSC denied the §1983 action on the grounds of claim preclusion finding "plaintiff can no longer allege—by virtue of his voluntary dismissal with prejudice—the injury necessary to make out a damages claim." See *Id.* at 251. The VSC reasoned that the voluntary dismissal with prejudice acted as "a concession by plaintiff" that no constitutional violation occurred and therefore, resulted in an adjudication of the merits of his constitutional claims.

Here, the District Court first acknowledges that "24 V.S.A. § 4472 does not bar a separate action for damages under 42 U.S.C. § 1983." JA-22 Opinion and Order at 26. Notwithstanding, the District Court reasoned that Appellant's loss in state court was tantamount to a decision on the merits that no constitutional violation occurred. This reasoning is flawed since the operative facts supporting the underlying state court judgements were never litigated or decided. Appellant has also never issued "a concession" that no constitutional violations or injuries occurred. An adjudication on the merits in the state court action relating to separate

44

issues of fact and law cannot reasonably be construed as a final adjudication of the merits of Appellant's §1983 claims.

The District Court's reasoning that Appellant's §1983 claims are barred under claim preclusion is rooted in a "reverse" exhaustion of state judicial remedies theory. It is axiomatic that a litigant is not required to exhaust state court remedies before commencing a §1983 action. *Steffel v. Thompson*, 415 U.S. 452, 472–473, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974) ("When federal claims are premised on [§ 1983]—as they are here—we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights"). As there is no state judicial exhaustion requirement, there is likewise no state judicial exhaustion prohibition. See § 7:4. Procedural considerations—Exhaustion of remedies—Prior to civil rights action, 2 Zoning & Plan. Deskbook § 7:4 (2d ed.) (stating "[i]n the federal courts, exhaustion of remedies in and of itself does not appear to present a procedural obstacle to a plaintiff filing a § 1983 action once the plaintiff establishes a deprivation of a federally protected right. "). The District Court's underlying reasoning that Appellant "exhausted" his defenses in state court is not a proper means to deny him the opportunity to redress the deprivation of his constitutional rights through an action under §1983.

Finally, the Appellant could not raise his constitutional claims in the enforcement action because the Environmental Division was powerless to decide his claims and award him damages under §1983. In this action, Appellant seeks an award of "actual, nominal, punitive, compensatory [], consequential damages," "reasonable attorney's fees and expenses," and other relief. See JA-17 Motion to Amend Ex. A at 29-30. As discussed, the Environmental Division is a court of limited jurisdiction. See 4 V.S.A. § 34. The Environmental Division does not have the authority to award damages to remedy civil rights violations. Such claims and awards are expressly reserved for the Civil Division. See 4 V.S.A. § 31. Since the nature of Appellant's claims was such that he could not have ligated nor sought damages for his constitutional injuries while defending against the enforcement action, "res judicata does not bar his federal § 1983 suit for damages." *Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999) (citations omitted).

For all the reasons set forth above, the District Court erred denying Appellant leave to amend his complaint based on Vermont claim preclusion law.

**III.    Alternatively, Even if Claim Preclusion Applies to Any of the Appellant's §1983 Claims, V.R.P. 60(b) Allows Appellant to Evade the Preclusive Effect of Res Judicata Upon Evidence of Misconduct or Any Other Reason Justifying Relief**

**A.    Rule 60(b) Constitutes Substantive State Law that the District Court was Required to Apply When Evaluating the Merits of a Rule 12(b)(6) Motion on Grounds of Vermont's Claim Preclusion Law**

As an initial matter, the District Court indicated that Rule 60(b) has no application in the District Court. However, Rule 60(b) is a state substantive law that the District Court was required to apply when evaluating the merits of the Town's Rule 12(b)(6) motion on grounds of Vermont claim preclusion law.

Federal courts should apply state substantive law and federal procedural rules. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "Such a dichotomy is sometimes difficult to apply since 'the line between 'substance' and 'procedure' shifts as the legal context changes.' *Argentina v. Emery World Wide Delivery Corp.*, 167 F.R.D. 359 (E.D.N.Y. 1996) citing *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). However, a procedural law is "the judicial process for enforcing rights and duties recognized by substantive law," while substantive law is "the law that governs the rights and obligations of individuals within a given jurisdiction." *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 894 (2d Cir. 2019). When deciding what law to apply in federal court, the court also considers whether disregarding the law that would control in state court would significantly affect

47

the result of the litigation in federal court. See *Hanna*, 380 U.S. at 466, 85 S.Ct. 1136. That "outcome-determination test," however "cannot be read without reference to the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id*. at 468, 85 S.Ct. 1136.

Here, Rule 60(b) constituted a state substantive law since it granted Appellant the right to challenge a final judgment for misconduct and other related reasons. Rule 60(b) states:

> "(b) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc. On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to introduce; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of a party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. In a proceeding under 15A V.S.A., a motion for reasons (1), (2), and (3) shall be filed not more than six months after the decree or order was issued. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud

> upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

The express terms of Rule 60(b) allow "the court [to] relieve a party ... from a final judgment, order, or proceeding," "by [way of] an independent action" for, among other reasons, misconduct or any other reason justifying relief. "Rule 60(b) replaces all existing modes of obtaining relief from a judgment on grounds such as mistake, fraud, or newly discovered evidence, with two alternative procedures: (1) a motion under the rule; (2) an independent action for such relief." See Rule 60, Reporter's Notes. Importantly, Rule 60(b) does not restrict a litigant to state court, nor does it require reference to the rule or a motion as a condition precedent to obtain such relief. The rule expressly grants litigants the right to commence an independent action for such relief. See Rule 60(b) ("The procedure for obtaining any relief from a judgment shall be… *by an independent action*."). The only requirement is that the litigant must allege facts sufficient to fall within the purview of the statute. That is, a litigant must allege fraud, misconduct, or any other reason justifying relief from the operation of the judgment. *Id.*

Since Rule 60(b) grants litigants the right to obtain relief from a final judgement on specified grounds, it is a substantive law that the District Court was required to apply when evaluating the merits of the Town's motion to dismiss under Vermont claim preclusion law.

For all the reasons set forth above, the District Court erred when it failed to apply Rule 60(b) when evaluating the Town's Rule 12(b)(6) motion.

**B.      Res Judicata Does Not Preclude Actions Under Rule 60(b)**

The District Court erred concluding that even if Rule 60(b) applies, it does not permit the Appellant to evade the preclusive effect of res judicata. In support of its conclusion, the District Court relied on *Cody v. Estate of Cody*, 134 Vt. 113, 114 (1976).

In *Cody,* the plaintiff commenced an action alleging fraud against the estate of her late husband. The defendant estate moved to dismiss the plaintiff's complaint. When the motion was heard neither counsel for plaintiff or the defendant appeared, and the court granted the motion to dismiss the fraud action. Plaintiff did not appeal the decision or seek relief under Rule 60(b). See *Id*. at 114. Thereafter, the plaintiff commenced the same action for fraud against the defendant, alleging the same cause of action and seeking the same relief. In evaluating the merits of plaintiff's second action, the VSC first reiterated that V.R.C.P. 60(b) does not limit the power of a court to entertain an independent action to relieve a party from a judgment." See *Id.* However, because the plaintiff commenced an action on "identical grounds" and "merely 'refiled' her complaint without reference to the prior proceedings," the Vermont Supreme Court concluded that she now has "'a lion in her path' and that lion is the doctrine of res judicata." In other words, the VSC concluded that

plaintiff's fraud suit was barred under res judicata because she failed "to seek relief pursuant to Rule 60(b) on the grounds of mistake, inadvertence, or excusable neglect." *Id.*

As set forth above, the District Court erred in concluding that *Cody* prevents the Appellant from "evad[ing] the preclusive effect of res judicata." The District Court's conclusion directly contradicts the statute itself which expressly allows "the court [to] relieve a party or the party's legal representative *from a final judgment*" by way of an independent action so long as the litigant sets forth a separate cause of action on the grounds permitted under the statute. By concluding Rule 60(b) does not evade res judicata, the District Court improperly nullified the express intent and effect of the statute.

The facts in this case are also entirely distinguishable from *Cody.* Here, Appellant commenced a separate action under §1983 and directly alleges the Town engaged in misconduct prior to and during the state court litigations. Appellant's §1983 claims also establish a nexus between the Town's misconduct, his injuries, and resulting final judgements. In addition to seeking relief from the state court judgements, the Appellant also demands "actual, nominal, punitive, compensatory, and consequential damages," and "reasonable attorney's fees and costs" due to the Town's misconduct. Unlike *Cody*, the Appellant's §1983 action properly "contemplates different grounds or different relief on the basis of the provisions

51

of V.R.C.P. 60(b)." See *Id.*

Accordingly, the District Court erred when it concluded that res judicata barred the Appellant's §1983 action under Rule 60(b).

## IV.    The District Court Erred by Concluding Appellant Conceded his Motion to Amend Would Have No Bearing on the Town's Motion to Dismiss

In denying the Appellant's Motion to Amend on grounds of futility, the District Court also relied on Appellant's claim that "[t]he proposed amendment does not directly affect the contents of the Town's pending motion to dismiss." The District Court construed this statement to be a concession "that the contents of the amended complaint would have no bearing on the outcome of these motions." See JA-22 Opinion and Order at 27. However, the District Court's reasoning is directly contradicted by the Appellant's opposition to the Town's Motion to Dismiss since *all* the factual contents contained in the amended complaint were *included* in the opposition. See JA-16 Opposition to Motion to Amend; see also, JA-17 Motion to Amend, Ex. A.

Furthermore, this statement by Appellant was made within the context of arguing that his amendments would not cause prejudice to the Town. Appellant prefaces his claim by arguing "the Town's motion to dismiss does not address the allegations of Plaintiff's Complaint but instead seeks dismissal under the *Rooker-Feldman* doctrine, *Younger* abstention, and claim preclusion" and if Appellant's motion is granted, the Town "would be responding to the allegations in Plaintiff's

52

Complaint for the first time…" JA-17 Motion to Amend at 3. In other words, Appellant was intending to argue that the Town would not be unduly prejudiced by the delay or expense of having to respond to the amendments.

Furthermore, the United States Supreme Court has directed:

> "Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

See *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Since the Appellant's Motion to Amend was not futile and set forth "underlying facts [and] circumstances [setting forth] a proper subject of relief," the District Court erred by denying Appellant the opportunity to test his claim on the merits.

For all the reasons set forth above, the District Court erred denying Appellant leave to amend his complaint.

## CONCLUSION

For all the foregoing reasons, the judgement of the District Court denying

Appellant leave to amend the complaint on the grounds of futility based upon the

*Rooker-Feldman* doctrine and Vermont claim preclusion law should be reversed.

Respectfully Submitted,

The Law Office of Joseph Indusi, PLLC

Joseph L. Indusi
400 Townline Road, Suite 100
Hauppauge, New York 11788
Phone: (631) 921-7464
joe@josephindusilaw.com

## CERTIFICATION PURSUANT TO
## Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 12,865 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2003, Times New Roman, Size 14.

Dated: Hauppauge, New York
      November 24, 2021

                                           /s/

*DB*