# 23-1234

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

DANIEL BANYAI,

Plaintiff-Appellant,

v.

TOWN OF PAWLET, JUDGE THOMAS S. DURKIN,
and JOHN AND JANE DOE 1 through 100,
whose identities are unknown at present,

Defendants-Appellees.

On Appeal from a Ruling of the
United States District Court for the District of Vermont
Case No. 2:23-cv-101

## BRIEF OF APPELLEE TOWN OF PAWLET

Kevin L. Kite, Esq.
Carroll, Boe, Pell & Kite, P.C.
64 Court Street
Middlebury, VT 05753
(802) 388-6711
kkite@64court.com
*Attorneys for Appellee Town of Pawlet*

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................. ii

JURISDICTIONAL STATEMENT ...................................................................................... 1

ISSUES PRESENTED FOR REVIEW ................................................................................. 1

STATEMENT OF THE CASE............................................................................................... 1

STANDARD OF REVIEW .................................................................................................. 12

ARGUMENT ....................................................................................................................... 13

    I.      Summary of the Argument.................................................................... 13

    II.     The underlying litigation "finally resolved" the claims asserted in the Complaint for *Rooker-Feldman* purposes............................................. 14

    III.    The Environmental Court had jurisdiction to consider Mr. Banyai's constitutional claims. ...................................................................... 19

    IV.    The Vermont courts did not "ratify" any alleged conduct and Mr. Banyai complains of injuries "caused by" the Vermont state court judgments. ............... 22

    V.     The claims asserted in the Complaint are barred by Vermont's claim preclusion doctrine.................................................................... 30

    VI.    The *Erie* doctrine applies only in diversity cases and does not bring Vt. R. Civ. P. 60(b) within the scope of the present action. ........................... 38

    VII.   Amendment of the Complaint would be futile. ................................... 41

CONCLUSION..................................................................................................................... 41

CERTIFICATE OF COMPLIANCE .................................................................................. 43

## TABLE OF AUTHORITIES

**Cases**

*Argentina v. Emery World Wide Delivery Corp.,* 167 F.R.D. 359 (E.D.N.Y. 1996)................... 39

*Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196 (2d Cir. 1992) ..................... 12

*Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023) ............................................................... 12

*Caiola v. Citibank, N.A.*, 295 F.3d 312 (2d Cir. 2002) ................................................... 39

*Cody v. Estate of Cody*, 134 Vt. 113 (1976) ................................................................. 40

*District of Columbia v. Heller*, 554 U. S. 570, 128 S. Ct. 2783 (2008)....................................... 36

*Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021) ....................................................... 23, 25, 26

*Durant, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56 (2d Cir. 2009)....... 12

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).......................... 38, 39

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517 (2005). ...... 14, 36

*Faulkner v. Caledonia County Fair Ass'n*, 2004 VT 123, 178 Vt. 51, 869 A.2d 103 ........... 30, 35

*Hanna v. Plumer*, 380 U.S. 460, 85 S. Ct. 1136 (1965) ................................................. 39

*Hinsdale v Village of Essex Junction*, 153 Vt. 618, 572 A.2d 925 (1990) ........................... 20, 32

*Hunter v. McMahon*, 75 F.4th 62 (2d Cir. 2023)........................................................... 18

*Iannarone v. Limoggio*, 2011 VT 91, 190 Vt. 272 ....................................................... 30

*In re Appeal of R.L. Vallee*, 1999 Vt. Envtl. LEXIS 2 (Vt. Env. Ct. 1999)................................. 21

*In re Letourneau*, 168 Vt. 539, 726 A.2d 31 (1998)................................................... 21

*In re Nortel Networks Corp. Sec. Litig.,* 539 F.3d 129 (2d Cir. 2008) ...................................... 39

*In re Tariff Filing of Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 769 A.2d 668 ....................... 30, 31

*In re Valois Airplane Storage Application*, 2009 Vt. Envtl. LEXIS 14 (Vt. Env. Ct. 2009)........ 21

*Littlefield v. Town of Colchester*, 150 Vt. 249, 552 A.2d 785 (1988) .......................................... 37

*Lovell*, 2005 Vt. Envtl. LEXIS 22 (Vt. Env. Ct. 2005) ......................................................... 21

*McDonald v. Chicago*, 561 U. S. 742, 130 S. Ct. 3020 (2010) ..................................................... 37

*McKithen v. Brown*, 481 F.3d 89 (2d Cir. 2007) ..................................................... 14, 22

*McKithen v. Brown*, 626 F.3d 143 (2d Cir. 2010) ................................................ 14, 22

*Mothershed v. Justices of the Supreme Court*, 410 F.3d 602 (2d Cir. 2005) ........................ 18, 19

*NY State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) ...... 36, 37

*Norton v. Larney*, 266 U.S. 511, 69 L. Ed. 413, 45 S. Ct. 145 (1925) ........................................ 12

*Pappas v. Philip Morris, Inc.*, 915 F.3d 889 (2d Cir. 2019) ......................................................... 39

*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001) ......................................................... 28

*Steffel v. Thompson*, 415 U.S. 452, 94 S. Ct. 1209 (1974) ..................................................... 37, 38

*Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018) ............................................. 23, 24, 26

*Sutton v. Purzycki*, 2022 VT 56, 295 A.3d 377 ......................................................... 35

*Swiatkowski v. Citibank*, 446 Fed. Appx. 360 (2d Cir. 2011) ......................................................... 12

*Town of Charlotte v. Aube-Hinsdale*, 2001 Vt. Envtl. LEXIS 49 (Vt. Env. Ct. 2001) ................ 21

*Town of Pawlet v. Banyai*, 2022 VT 4, 216 Vt. 189, 274 A.3d 23 .................................... 9, 15, 33

*United States v. Quintieri*, 306 F.3d 1217 (2d Cir. 2002) ......................................................... 36

*Vengalattore v. Cornell Univ.*, 36 F.4th 87 (2d Cir. 2022) ......................................................... 12

*Woodstock v. Shaw*, 2001 Vt. Envtl. LEXIS 77 (Vt. Env. Ct. 2001) ......................................... 21

**Statutes**

24 V.S.A. § 4472 ......................................................... 21

24 V.S.A. § 4472(a) ......................................................... 20, 21

24 V.S.A. § 4472(b) ......................................................... 20

24 V.S.A. § 4472(d) ..................................................................................... 4

24 V.S.A. chapter 117 ......................................................................... 19, 20

4 V.S.A. § 34(2) ...................................................................................... 19

42 U.S.C. § 1983 ....................................................................................... 1

H.175, Act. No. 115, Gen. Assembly (Vt. 2004), Summary ....................... 21

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................ 13

Fed. R. Civ. P. 12(b)(6) ............................................................................ 13

Fed. R. Civ. P. 12(d) ................................................................................ 16

Vt. R. Civ. P. 1 ......................................................................................... 38

Vt. R. Civ. P. 60(b) .................................................................................. 13

## JURISDICTIONAL STATEMENT

The Appellant asserts that the district court has jurisdiction under federal question jurisdiction (28 U.S.C. § 1331) and that this Court has jurisdiction under 28 U.S.C. § 1291. The district court determined that it lacked jurisdiction over portions of this matter under the *Rooker-Feldman* doctrine. Appendix ("A") at A266–A277. Jurisdiction is therefore a critical issue to be resolved in this appeal.

## ISSUES PRESENTED FOR REVIEW

1. Does the *Rooker-Feldman* doctrine bar the district court from asserting subject matter jurisdiction over the first three claims in Plaintiff's Complaint?

2. Should the Complaint be dismissed because the claims asserted in the Complaint are barred by Vermont's law of claim preclusion?

3. Did the district court err in denying the motion to amend (Doc. 17) of the Appellant/Plaintiff Daniel Banyai?

## STATEMENT OF THE CASE

In the Complaint, Daniel Banyai, the Appellant/Plaintiff in this appeal, brings four claims against the Town of Pawlet, Vermont and against Vermont Superior Court Environmental Division Judge Thomas S. Durkin ("Judge Durkin"),[1] pursuant to 42 U.S.C. § 1983, for violations of the U.S. Constitution, namely (1) an "Equal Protection: Selective Enforcement" claim;[2] (2) an "Equal Protection: Class of One" claim;[3] (3) a "Substantive Due Process" claim;[4]

---

[1] The district court dismissed Judge Durkin from this action based on judicial immunity. A265-A266.

[2] A17–A19 (Complaint at ¶¶ 57–72); *see also* A192–A194 (Amended Complaint at ¶¶ 81–97).

[3] A19–A20 (Complaint at ¶¶ 73–83); *see also* A194–A196 (Amended Complaint at ¶¶ 98–109).

and (4) a "Second Amendment Violation."[5] All four of these claims arise from the Pawlet Zoning Administrator's issuance on August 29, 2019 of a Notice of Violation ("NOV2") with respect to property owned by Mr. Banyai located at 541 Briar Hill Road in Pawlet, Vermont (the "Property")[6] and a subsequent legal action in the Vermont Environmental Division to enforce the August 29, 2019 Notice of Violation, which resulted in a merits decision and a contempt order against Mr. Banyai.[7]

The district court dismissed the claims asserted in the Complaint on two separate grounds, firstly, that the *Rooker-Feldman* doctrine barred the district court from exercising subject matter jurisdiction over the first three claims, A266–A277, and, secondly, that all the claims in the Complaint are barred by Vermont's doctrine of claim preclusion, A277–A284. Given the basis of dismissal, an understanding of the official actions taken by the Town of Pawlet and by the Vermont state courts in connection with Mr. Banyai and his property is essential to the resolution of this appeal.

Mr. Banyai acquired the Property in 2013. A8–A9 at ¶ 17. The Property is landlocked and is accessed through a 30-foot-wide right of way across an adjoining parcel. *Id.* Without first obtaining a permit, Mr. Banyai constructed two outdoor shooting ranges on the Property, which included standalone targets, earthen berms, and one range which contained covered shooting

---

[4] A20–A22 (Complaint at ¶¶ 84–100); *see also* A196–A198 (Amended Complaint at ¶¶ 110–127).

[5] A22–A23 (Complaint at ¶¶ 101–114); *see also* A198–A200 (Amended Complaint at ¶¶ 128–141).

[6] *See, e.g.*, A11–A13 (Complaint at ¶¶ 37–41) (alleging issuance of August 29, 2019 Notice of Violation, referenced as "NOV2"); *see also* A181–A182 (Amended Complaint at ¶¶ 41–45) (same).

[7] *See, e.g.*, A13–A17 (Complaint at ¶¶ 42–56); (alleging conduct by Judge Durkin in connection with enforcement action and contempt order); *see also* A182–A182 (Complaint at ¶¶ 46–60) (same).

benches and a façade. A9 at ¶ 19. Mr. Banyai began using the Property for training and shooting events under the name "Slate Ridge." *Id.* at ¶ 20. He then began construction of a one-room, 500 square foot building. *Id.* at ¶ 21. Erich Mach, the Pawlet Zoning Administrator, visited the Property and "directed" Mr. Banyai to submit a zoning application for the building and the use. *Id.*

On or about December 5, 2017, Mr. Banyai submitted a zoning permit application, "requesting approval for a 'school' structure and change of use of property from 'land' to 'school.'" A10 at ¶ 22. On January 2, 2018, Zoning Administrator ("ZA") Erin Mach denied the application (the "2018 Denial") on the ground that "the Property's 30 foot access right of way did not meet the Town's 50 foot right of way requirement for landlocked parcels adopted in 2011." A10 at ¶ 23. Mr. Banyai did *not* appeal the 2018 Denial. A10 at ¶ 26.

On April 1, 2018, Mr. Banyai applied to the Pawlet Development Review Board ("DRB") for a variance from the 30-foot right-of-way requirement. *Id.* As part of that April 1, 2018 submission, Mr. Banyai referred to the fact that his 30-foot right of way was a "pre-existing nonconforming situation," Supplemental Appendix ("SA") at SA3, ¶ 13, i.e., that Mr. Banyai believed that the Property's 30-foot access pre-dated the adoption of the Pawlet Bylaws and therefore "qualified as a pre-existing non-conforming lot under Vermont statute," A10 at ¶ 23.

After a hearing, the DRB determined that no variance was necessary because the Property qualified as a pre-existing non-conforming lot with its 30-foot right of way. A11 at ¶ 30. Mr. Banyai's neighbors appealed the DRB's variance decision to the Vermont Environmental Division. *Id*.

On May 29, 2018, while the neighbors' variance appeal was pending, ZA Mach issued a Notice of Violation to Mr. Banyai ("NOV1") "advising Plaintiff that his construction of a

building and use of the property without a permit violated the Town of Pawlet zoning

regulations." *Id*. at ¶ 31. In response, on June 4, 2018, Mr. Banyai submitted a permit application

seeking approval for the "school" building and a change of land use to "school/training." A12 at

¶ 32. The ZA approved the application that same day (the "2018 Permit"). When the 2018 Permit

was approved, the Environmental Division had not yet resolved the neighbors' appeal of the

variance decision. *Id.* at ¶ 35.

On October 5, 2018, the Pawlet Zoning Administrator issued a permit (Application #18-

10-05) for construction of a 24' by 23' garage/apartment on the Property. SA10.

On January 4, 2019, the Vermont Environmental Division issued a ruling in connection

with the neighbors' appeal of the DRB's variance decision.[8] The Environmental Division ruled

that Mr. Banyai's April 1, 2019 submission to the DRB was "an application for a variance to the

DRB, not an untimely appeal of the ZA's denial." SA6. This distinction mattered, the court

explained, because 24 V.S.A. § 4472(a) provides that the "exclusive remedy" with respect to a

zoning decision is through appeal and 24 V.S.A. § 4472(d)[9] limits the manner in which a party

can attack a permitting decision:

> In the context of zoning ordinance enforcement, the Vermont Supreme Court has
> held that § 4472(d) applies to preclude parties from raising defenses, including a
> preexisting nonconformity defense, if they did not appeal the underlying
> enforcement order. *See Town of Charlotte v. Richmond*, 158 Vt. 354, 356-57
> (1992) (concluding that party could not later raise nonconforming use defense

---

[8] The Environmental Division's January 4, 2019 variance decision is referenced in the
Complaint. A12 at ¶ 35. A copy of the variance ruling, written by Judge Thomas G. Walsh, is
provided in the Supplemental Appendix at SA1.

[9] 24 V.S.A. § 4472(d) provides: "Upon the failure of any interested person to appeal to an
appropriate municipal panel under section 4465 of this title, or to appeal to the Environmental
Division under section 4471 of this title, all interested persons affected shall be bound by that
decision or act of that officer, the provisions, or the decisions of the panel, as the case may be,
and shall not thereafter contest, either directly or indirectly, the decision or act, provision, or
decision of the panel in any proceeding, including any proceeding brought to enforce this
chapter."

because they did not appeal zoning administrator's notice of violation); *Town of Sandgate v. Colehamer*, 156 Vt. 77, 85-86 (1990) (holding that because defendant's exclusive remedy lay in appeal, which he failed to do, he could not challenge the validity of the ordinance later in the enforcement action); *see also Dep't of Corr.*, 171 Vt. at 589-91 (concluding that § 4472 bars collateral attack of unappealed decision premised on sovereign immunity). A party who does not appeal a zoning administrator's final decision loses the opportunity to raise defenses against that decision later on. SA7.

. The Environmental Court found that the 2018 Denial "denied Mr. Banyai's application solely based on a determination that the 30-foot right-of-way did not conform with the Bylaws." SA7. The court then held that Mr. Banyai could *not* challenge that determination by arguing that the 30-foot access conformed with the Bylaws as a pre-existing non-conformity:

> By raising this argument, Mr. Banyai initiated a direct attack on the ZA's conclusion in a proceeding that was not an appeal under 24 V.S.A. § 4465. Therefore, the question of whether the right-of-way was a preexisting nonconformity was not properly before the DRB at the April 25, 2018 hearing.

SA7. Accordingly, the Court vacated the DRB's conclusion that no variance was required because the 30-foot access qualified as a pre-existing nonconformity. SA8.

However, the Environmental Division concluded that Mr. Banyai *was* entitled to ask the DRB for a variance, provided he did not challenge the underlying determination that the 30-foot access violated the Pawlet Bylaws. SA7–SA8. The Environmental Division therefore remanded the matter to the DRB with instructions to "evaluate the merits of Mr. Banyai's variance application in the first instance." SA9. After remand, the DRB denied Mr. Banyai's variance request on July 11, 2019. A13 at ¶ 35.

Plaintiff did not appeal the Environmental Court's decision or the DRB's variance decision after remand because he believed "he then possessed an un-appealed and, therefore, valid permit for all structures and uses of his Property" in the form of the June 2018 Permit. A13 at ¶ 36.

However, on August 29, 2019, Pawlet Zoning Administrator Hal Wilkins issued a new Notice of Violation to Mr. Banyai ("NOV2").[10] *Id.* at ¶ 37. NOV2 stated:

> **You have erected multiple structures in violation of [Article VII, Section 2 of the Town of Pawlet Unified Bylaws], and you are operating a training facility/shooting school in violation of this provision. To cure the violation of the Town of Pawlet Unified Bylaws, you must eliminate the unpermitted uses on the property, remove all unpermitted buildings, and not allow unpermitted uses to resume on the property.**
>
> The <u>only</u> permitted use on the 541 Briar Hill Road property is a 24' by 23' garage / apartment that was approved (Application #18- 10-05) on October 5, [2018][11] by the Zoning Administrator.
>
> You have <u>seven days</u> after receipt of this notice to bring the property into compliance with the Permit. If you do not do so, you will be subject to a fine of up to $200 per day as provided in 24 V.S.A. § 4451(a). If the fines are not promptly paid you may be liable for double the amount as provided in 24 V.S.A. § 4451(a). You may also be subject to an enforcement action for an injunction or other relief in Vermont Superior Court, Environmental Division. You will not be entitled to an additional warning notice for a violation occurring after the seven days have expired.
>
> You may appeal this notice of violation to the Town of Pawlet Development Review Board. To file an appeal, you must [providing instructions].

SA10 (bold and underlined emphases in original).

Mr. Banyai did not appeal NOV2 because he believed the June 2018 Permit authorized him to complete the school building and to use the Property as a shooting range; in Mr. Banyai's view, appeal of NOV2 was unnecessary because "he had no unpermitted uses or unpermitted buildings on the Property, and was therefore, already in full compliance with NOV2." A13 at ¶ 38.

In September 2019, the Town filed an action to enforce NOV2 in the Vermont Environmental Court, i.e., *Town of Pawlet v. Daniel Banyai*, Vermont Superior Court,

---

[10] A copy of NOV2 is provided in the Supplemental Appendix at SA10.

[11] NOV2 (dated August 29, 2019) mistakenly dates the garage/apartment permit as "October 5, 2019."

Environmental Division, Docket No. 105-9-19 Vtec. The enforcement actions was heard by Defendant Judge Durkin, and Judge Durkin wrote the state court opinions at issue in this appeal. In the enforcement action, Mr. Banyai stated "a general denial of the Town's claims and asserted several challenges to the Town's action." A27.

The Town filed a motion for summary judgment. In a decision on the motion,[12] Judge Durkin held that Mr. Banyai "is barred from contesting the violations found in the August 29, 2019 NOV." SA16. Judge Durkin reached this holding relying on the same law and the same reasoning applied to the DRB variance decision, i.e., that, under § 4472, failure to appeal a Notice of Violation binds an applicant or interested party to the determinations made in the Notice. SA16–SA18.

The environmental court also considered Mr. Banyai's defense that his school building and use was authorized under the June 2018 permit, but the court rejected that argument on two grounds. First, the June 2018 Permit was issued while the neighbors' appeal on the project was pending before the environmental court and, as a matter of Vermont law, a pending appeal deprives a zoning administrator of "jurisdiction to approve the Project." SA19. Second, Mr. Banyai had failed to appeal NOV2 and, as a result, "he cannot now challenge the violations found therein." *Id.* However, the Court also reserved a number of factual issues for hearing:

> It is not clear, for example, whether Mr. Banyai's ongoing violations were innocent or not. It is also unclear what Mr. Banyai must do to bring the Property into compliance with the Bylaws, and what opportunities he might have to address deficiencies in his prior permit applications. We are also left to wonder whether Mr. Banyai continues to operate his facility in violation of the zoning provisions that required him to obtain a change of use permit.

SA18.

---

[12] A copy of the summary judgment decision is provided in the Supplemental Appendix at SA12.

On March 5, 2021, after hearings, Judge Durkin issued a Decision on the Merits (the "Merits Decision"). A26–A47. In the Merits Decision, Judge Durkin made the following holdings: First, incorporating the summary judgment decision by reference, the court held that because Mr. Banyai failed to appeal NOV2, he "is barred from challenging [NOV2's] factual and legal conclusions and is now bound by all the determinations made therein." A37–A38. As noted above, NOV2 determined that

> the only permitted use on the 541 Briar Hill Road property is a 24' by 23' garage / apartment that was approved (Application #18- 10-05) on October 5, [2018] by the Zoning Administrator.

SA10. Second, the Court held that Mr. Banyai "is liable for the zoning violations alleged by the Town," and "permanently enjoined from the unpermitted use of his property." A38. Third, the court held that Mr. Banyai could not rely on the June 2018 Permit because the ZA lacked jurisdiction to issue the permit while an appeal was pending, because Mr. Banyai's failure to appeal NOV2 bound him to NOV2's determination that the only permitted building on the Property was the garage/apartment, and because "Mr. Banyai has completed improvements and increased the uses of his Property well beyond the authority of the invalid 2018 permit." A39–A40. Based on these rulings, Judge Durkin imposed a permanent injunction enjoining Mr. Banyai from the unpermitted use of his Property and imposed fines running from the date he was required to cure the violations described in NOV2 through the date of the court's decision. A46–A47. The environmental court issued this Merits Decision as a final order, accompanied by a Judgment Order. A47.

Mr. Banyai appealed this final decision to the Vermont Supreme Court, and, on January 14, 2022, the Vermont Supreme Court affirmed the Judge Durkin's Merits Decision:

> To summarize, NOV2 is final and binding under 24 V.S.A. § 4472 and landowner is precluded from challenging any of the violations contained in it. Therefore, landowner cannot rely on the June 2018 Permit, whatever its initial validity, or on

his general assertion that the improvements on and uses of his property are not subject to municipal zoning. The trial court also did not admit three of the exhibits challenged as a sanction and admission of the fourth, if in error, was harmless. Finally, the trial court did not abuse its discretion in assessing the fines due as a result of the violations.

Affirmed.

*Town of Pawlet v. Banyai*, 2022 VT 4, ¶40, 216 Vt. 189, 207-208, 274 A.3d 23, 36-37.

After the Vermont Supreme Court issued its decision, Mr. Banyai did not comply with the requirements of Judge Durkin's Merits Decision, and the Town of Pawlet moved for contempt. After hearings, Judge Durkin issued a "Decision on Post-Judgment Motions for Contempt and Fines," dated February 8, 2023 (the "Contempt Decision"). A48–A76. In that decision, Judge Durkin found that Mr. Banyai had not taken steps to comply with the Merits Decision and that Mr. Banyai's "inaction is in willful disregard to the Court's March 5 Order, and not inaction pursuant to some mistake or misunderstanding." A57. Judge Durkin considered and rejected numerous justifications, excuses, and arguments asserted by Mr. Banyai for his failure to comply with the Merits Decision, A57–A61, ultimately concluding:

> As such, the Court does not find Respondent's assertions of good faith efforts or mistake of law to be credible. Rather, the Court concludes that Respondent's ongoing delay, untimely arguments, and efforts with the school building to be experimentations with ongoing disobedience, further attempts to circumvent Court Orders, and willful contempt.

A61. Judge Durkin also determined,

> Sanctions in this case are warranted. Respondent has demonstrated a willfulness, perhaps even an enthusiasm, for disregarding the Town's Bylaws, this Court's Orders, and the authority of the Judiciary. This enforcement matter has been ongoing since September 9, 2019, nearly three and a half years, and the March 5 Order underlying this contempt action has been final for over a year. Pawlet 2022 VT 4. Throughout that time, Respondent has demonstrated a willingness to openly disobey this Court's repeated orders in an attempt to obstruct discovery, disregard injunctions, and evade curing the violations of the Town's Bylaws and this Court's Order enforcing those Bylaws.

A62. Judge Durkin therefore imposed a variety of sanctions, including curable fines, and the potential for a writ of mittimus for Mr. Banyai's imprisonment, if he failed to comply, to allow the Town to enter his Property and remove the unpermitted structures. *See* A61–A76 (discussing and imposing sanctions). Mr. Banyai did not appeal the February 8, 2023 Contempt Decision to the Vermont Supreme Court.

On May 30, 2023—over three months after the Contempt Decision and two months after the appeal period on the Contempt Order had expired—Mr. Banyai filed the Complaint in the present action in the United States District Court for the District of Vermont.

The Town filed a Motion to Dismiss on June 12, 2023, A88–A100, and Mr. Banyai filed an Opposition to the Town's Motion to Dismiss on July 12, 2023, A101–A125. Mr. Banyai's Opposition included seven Exhibits, including a copy of the original Verified Complaint filed on May 30, 2023, three affidavits, a copy of a tweet, a copy of a Judgment Order from the underlying state proceedings, and an assurance of Discontinuance from an unrelated case. *See* A126 (listing Exhibits). The Opposition made no mention of a potential motion to amend or disclose any intent to seek amendment of the original Complaint and instead presented argument based on purported facts falling outside the four corners of the Complaint.

Two days after submitting his Opposition, Mr. Banyai filed a Motion to Amend the Complaint. A168–A171 (Doc. 17). In that Motion to Amend, Mr. Banyai stated:

> The proposed amendment does not directly affect the contents of the Town's pending motion to dismiss. Assuming the Town's motion to dismiss is ultimately denied, the Town would be responding to the allegations in Plaintiff's Complaint for the first time following such denial. As a result, the proposed changes will not require the Town to suffer any prejudice in the form of delay or with respect to any discovery.

A170. Mr. Banyai did not argue before the district court that amending his Complaint would allow him to survive the Town's Motion to Dismiss.

10

The Town filed its reply memorandum on July 24, 2023. A234–A243. The district court ruled in the Town's favor on the motion to dismiss and denied Mr. Banyai's motion to amend as futile. A249–A286. This appeal followed. A288.

This review of the lengthy state proceedings that preceded this federal action, although extensive, is not exhaustive. Mr. Banyai has been engaged in litigating the issues raised in his federal Complaint since 2018. The Argument below will provide additional details relevant to this appeal as required.

However, this brief review underscores an important pattern that is highly germane to the issues at stake in this appeal: Most of Mr. Banyai's present difficulties with the Town of Pawlet and the Vermont state courts are the result of Mr. Banyai's own failure to act, either by failing to appeal official actions when he had the opportunity to do so or by failing to comply with lawful court orders once they were issued. Although the state court proceedings described above repeatedly emphasized to Mr. Banyai that Vermont law requires him to raise defenses and claims at the appropriate time, within the appropriate proceedings, Mr. Banyai has nonetheless failed to do so. Mr. Banyai failed to appeal NOV1, and, as a result, he lost his opportunity to raise defenses and claims related to whether his 30-foot access was a pre-existing nonconformity. When the DRB denied the variance permit after remand, Mr. Banyai did not appeal the DRB decision to the environmental court, even though he was entitled to do so, and even though the environmental court had just told Mr. Banyai in the remand order that failure to appeal a permit decision would bar his ability to contest the determinations made within it. And again, when ZA Wilkins issued NOV2, Mr. Banyai failed to appeal that Notice, thereby losing his opportunity, under Vermont law, to challenge NOV2's determination that the only permitted structure on the Property was the garage/apartment. Finally, after the Vermont Supreme Court had affirmed the

Merits Decision and after the environmental court had found Mr. Banyai in contempt of court, Mr. Banyai failed to appeal the Contempt Decision even though he was entitled to so under Vermont law, choosing instead to wait for three months before filing this federal action.

Mr. Banyai's recurring failure to appeal key decisions affecting his rights is crucial to resolution of the issues on appeal because, as the following argument will show, Mr. Banyai now asks the federal courts to review and reject these very decisions and tries to assert claims *now* that he could—and should—have asserted *then* in Vermont state court.

## STANDARD OF REVIEW

The Town supplements the Appellant's presentation of the Standard of Review with the following:

With respect to 12(b)(1) motions to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of demonstrating jurisdiction. *Durant, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing *Norton v. Larney*, 266 U.S. 511, 515, 69 L. Ed. 413, 45 S. Ct. 145 (1925)).

In both, a 12(b)(6) motion for failure to state a claim or a 12(b)(1) motion for lack of jurisdiction, a court must generally confine itself to the factual allegations in the complaint, which are assumed to be true; however, the court may also consider documents incorporated into the complaint by reference and matters, such as related court proceedings, of which a court may take judicial notice. *E.g., Brokamp v. James*, 66 F.4th 374, 381 (2d Cir. 2023); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022); *Swiatkowski v. Citibank*, 446 Fed. Appx. 360, 361 (2d Cir. 2011). Accordingly, this Court may properly consider NOV1 and NOV2 and the

various state court decisions referenced in this Brief both because these documents are incorporated by reference into the Complaint and because they constitute documents of which this Court may take judicial notice.

## ARGUMENT

### I.    Summary of the Argument.

Pursuant to Fed. R. Civ. P. 12(b)(1), the district court held that the *Rooker-Feldman* doctrine bars the district court from asserting subject matter jurisdiction over Mr. Banyai's equal protection and due process claims. *See* A266–A277 (discussing applicable law, analyzing claims, and reaching conclusion). Pursuant to Fed. R. Civ. P. 12(b)(6), the district court held that the entire Complaint (including the Second Amendment claim) was barred by Vermont's doctrine of claim preclusion. A277–A284. In reaching this conclusion, the district court rejected Mr. Banyai's argument that Vermont Rule of Civil Procedure 60(b) would allow him to escape the preclusive effects of Vermont's *res judicata* bar here in federal court. A283–A284. Finally, the district court denied Mr. Banyai's Motion to Amend his Complaint because his "request for leave to amend his complaint has proven futile" and because Mr. Banyai conceded in his Motion to Amend that the "'proposed amendment does not directly affect the contents of the Town's pending motion to dismiss.'" A284.

The Town agrees with the district court's rulings on these matters and will not spend time or space here describing the district court's reasoning in detail. Instead, the Town's Argument will focus on demonstrating that the Appellant Brief fails to identify any reversible error in connection with the district court's ruling.

With regard to *Rooker-Feldman*, the following argument will show that Appellant (1) mischaracterizes the state court record in his attempt to demonstrate that his claims were not "finally resolved" before this federal action was filed, (2) erroneously asserts that the Vermont

Superior Court Environmental Division did not have the authority or jurisdiction to consider his constitutional claims, and (3) fails to show that the Vermont state courts "ratified" the conduct of which he complains.

With respect to the district court's dismissal based on Vermont's doctrine of claim preclusion, the following Argument will show that the Appellant has improperly narrowed the scope of Vermont's transactional test for claim preclusion and mischaracterized the allegations in his complaint in his effort to avoid claim preclusion. Moreover, the Argument will also demonstrate that Vt. R. Civ. P. 60(b) does not apply in this action or otherwise lift the claim preclusion bar imposed by Vermont law.

In closing, the Argument show that the proposed amendments are futile and that Appellant has failed to demonstrate otherwise.

## II. The underlying litigation "finally resolved" the claims asserted in the Complaint for *Rooker-Feldman* purposes.

The district court held that the *Rooker-Feldman* doctrine barred the two equal protection claims and the substantive due process claim asserted in Mr. Banyai's Complaint. A266–A277.

> *Rooker-Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced.

*McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (citing *McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007)); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284-288, 125 S. Ct. 1517, 1522-1524, 161 L. Ed. 2d 454, 461-464 (2005) (discussing development and application of the *Rooker-Feldman* doctrine). The district court found that all four of the *Rooker-Feldman* requirements are met in the present case. A266–A277.

14

In his Brief, Mr. Banyai argues that his constitutional claims were not "finally resolved" prior to commencement of this federal action. *See* Appellant's Brief at 29–31. This argument is apparently intended to challenge the district court's rulings on the first and fourth requirements, namely, that the plaintiff "lost in state court" and that the "state court judgment was entered before the plaintiff's federal suit commenced." *See* Appellant's Brief at 29-31 (making argument). This argument will not withstand scrutiny.

Specifically, Mr. Banyai argues that none of the judgments relied on by the district court

involved or related to facts supporting Appellant's § 1983 claims, including allegations that the Town was motivated by and acted pursuant to an unconstitutional purpose prior to and during the state court litigations.

Appellant's Brief at 30. This argument mischaracterizes the state court record.

Mr. Banyai repeatedly asserted concerns of bias and constitutional violations in the Vermont state court proceedings. In the NOV2 enforcement proceedings, Mr. Banyai asserted that "he was 'attempting to defend [his] property rights, family's rights, and individual civil liberties,'" A27, "stated that his neighbors, John Davis and Mandy Hulett 'exhibited criminal, narcissistic, and corrupt behaviors within the town government,'" A35, and refused to answer the Town's questions on cross-examination based on claims of "'bias, nepotism, and corruption,'" A35. Moreover, before the Vermont Supreme Court, during his appeal of the March 5, 2021 Merits Decision, Mr. Banyai argued that the violations alleged in NOV2 "are for private recreational land uses not subject to municipal zoning" *Town of Pawlet v. Banyai*, 2022 VT 4, ¶11, 216 Vt. 189, 196, 274 A.3d 23, 29;, that NOV2 "attempts to regulate private recreational land uses not subject to municipal zoning," *id*. at ¶ 18; that "interpreting § 4472 in a way that concludes NOV2 is final and binding violates Dillon's Rule [and] would allow the zoning administrator to act in a way not authorized by the Legislature," *id.* at ¶ 19; and that "interpreting

§ 4472 in a way that concludes NOV2 is final and binding violates . . . the constitutional principle of separation of powers," *Id*.

These objections, assertions, and statements echo the allegations in the Complaint and in the Amended Complaint. In the Complaint, Mr. Banyai asserts a selective enforcement claim and an equal protection "class of one" claim based on allegations that town officials subjected Mr. Banyai to "selective, spiteful, targeted and differential treatment." A18 at ¶ 71; A20 at ¶ 82. In the proposed Amended Complaint,[13] Mr. Banyai asserts the same selective enforcement and equal protection "class of one" claims, but adds specific allegations that his neighbors, including John Davis and the Hulett family "used their influence within the community and positions of power in the Town government to illicitly weaponize the Town against Plaintiff," A187 at ¶ 65, and that town officials were biased against Plaintiff and treated him differently due to his "dispute with the Hulett family regarding the purchase of the Property and Plaintiff's alleged affair with Rebecca Hulett," A193 at ¶ 92, A194 at ¶ 100. Similarly, the Amended Complaint asserts the same substantive due process claim, but adds a specific allegation that

> Defendants' conduct was influenced by the Defendants' intent to harass the Plaintiff for his dispute with the Hulett family and their animus toward Plaintiff for expressing his freedom of speech, association, and right to bear arms as protected by the United States Constitution

---

[13] Arguably, the facts in the Amended Complaint are not properly before this Court in connection with the Town's Motion to Dismiss. Mr. Banyai did not rely upon his Motion to Amend in opposing the Town's Motion to Dismiss. *See* Doc. 16 (not mentioning amendment of pleadings). Rather, Mr. Banyai's memorandum in opposition to the Town's motion to dismiss presented affidavits and information that were "matters outside the pleadings," Fed. R. Civ. P. 12(d), including three affidavits and a copy of a Tweet. *See* A126 (listing exhibits). The Town argued that these materials could not be considered under Rule 12(d) and lacked sufficiently reliability to be considered under Rule 12(b)(1). *See* A234–A236 (making argument). Demonstrably, given the district court's absence of discussion regarding the facts asserted in the affidavits and exhibits, the district court declined to consider those materials while deciding on the motion to dismiss.

16

A197 at ¶ 120.

The allegations in the Complaint and Amended Complaint are simply more specific iterations of the same issues that Mr. Banyai raised before the Vermont state courts. Therefore, the Appellant is mistaken in his assertion that the Vermont state courts decisions did not involve or were not related to "facts supporting Appellant's § 1983 claims." Mr. Banyai raised these same concerns before the Vermont courts. However, Mr. Banyai "lost in state court" with respect to these claims because the Vermont courts held he had lost his opportunity to assert those claims and defenses by failing to appeal NOV2, ultimately resulting in the issuance of two final judgments—the Merits Decision and the Contempt Decision—that Mr. Banyai now asks the federal courts to review and reject. See A24 (Complaint at Prayer for Relief) (asking court to issue order terminating the Environmental Court's injunction; revoking NOV2; reinstating the June 2018 Permit (which the Vermont Supreme Court has said is invalid); and enjoining and restraining enforcement of the Environmental Court's orders to deconstruct and remove the unpermitted buildings on the Property). The district court correctly held, given the allegations in the Complaint and the relief Mr. Banyai seeks, that the present Complaint is barred by the *Rooker-Feldman* doctrine.

The Appellant cites cases in his brief describing applicable law but he does not provide any legal argument explaining why those cases would militate against the district court's *Rooker-Feldman* holding in this case. *See* Appellant's Brief at 29–30 (citing cases as applicable law but providing no legal analysis of their applicability to this case). Mr. Banyai's argument on these issues does not rely on any reasoned appeal to law.

17

In any event, the cited cases do not support the Appellant's argument. In *Hunter v. McMahon*, 75 F.4th 62 (2d Cir. 2023), the federal plaintiff filed her federal complaint while she was actively appealing the related state court judgment. *Hunter*, 75 F.4th at 65. The *Hunter* court held that *Rooker-Feldman* did not apply because the doctrine only applies after "state court proceedings have ended" and a state court appeal of the relevant state court order was still pending. *Id*. at 67. Here, at the time Mr. Banyai filed his complaint, the Environmental Court's Merits Decision had been fully and finally appealed to the Vermont Supreme Court and Mr. Banyai had failed to timely appeal the Environmental Court's post-judgment Contempt Decision. Accordingly, the crucial issue in *Hunter*—a pending state appeal of a court order that is the subject of the federal complaint—is not present. *Hunter* does not indicate that the district court erred in this case by determining that the relevant state court proceedings against Mr. Banyai had ended when he filed his complaint.

*Mothershed v. Justices of the Supreme Court*, 410 F.3d 602 (2d Cir. 2005) does not indicate that the district court erred either. In *Mothershed*, an attorney filed a federal § 1983 action challenging disciplinary actions taken against him in Arizona state court. The *Mothershed* plaintiff claimed he had been denied due process in his specific case because the disciplinary panel failed to follow an applicable state rule. *Mothershed*, 410 F.3d at 607. The *Mothershed* plaintiff also brought a general challenge to Arizona rules, alleging that the admission requirements in the Arizona Supreme Court Rules violated Arizonans' First Amendment right to consult an attorney of their choosing and contravened both the Sherman Antitrust Act and the Arizona Uniform State Antitrust Act. *Id*. at 608.

The *Mothershed* Court held that the plaintiff's specific as-applied claim related to the handling of his particular case was barred by *Rooker-Feldman*. *Id*. at 607. However, the court

held that the plaintiff's general challenge to the state rules was not barred because "a general attack on a state's admissions rules may be heard by lower federal courts." *Id*. at 608.

Here, Mr. Banyai launches no general challenge to Vermont statutes or rules and instead only challenges the specific enforcement action brought against him, based on the same objections and challenges he asserted before the Vermont state courts. *Mothershed* provides no basis for finding error in the district court's ruling.

The Appellant has failed to identify any error in the district court's determination that Mr. Banyai lost in state court based on final orders that were issued before he began these federal proceedings. The Town of Pawlet therefore respectfully requests this Court affirm those holdings.

## III.    The Environmental Court had jurisdiction to consider Mr. Banyai's constitutional claims.

The Appellant argues that *Rooker-Feldman* should not apply because the "Environmental Division lacked jurisdiction to even consider Appellant's § 1983 claim." Appellant's Brief at 30. The Appellant provides no legal argument to support this contention; he merely asserts the conclusion without analysis. *Id.* at 30-31. Such an unsupported argument cannot win. In any event, the argument is mistaken.[14]

Vermont's environmental courts have full authority and jurisdiction to consider constitutional claims. Vermont statute states that the Environmental Division has jurisdiction "of matters arising under" specified Vermont statutes, including, in relevant part here, "24 V.S.A. chapter 117." 4 V.S.A. § 34(2).[15] Chapter 117, which governs "Municipal and Regional Planning

---

[14] The defects of the Appellant's jurisdiction argument identified in the text are equally applicable to Mr. Banyai's claim preclusion arguments, which are discussed more fully *infra*.

[15] 4 V.S.A. § 34 provides, in its entirety: "<u>Jurisdiction; Environmental Division</u>. The Environmental Division shall have: (1) jurisdiction of matters arising under 10 V.S.A. chapters

19

and Development," is the chapter under which the original enforcement action in this case was first commenced.

Although § 34 limits the specific *matters* over which the Environmental Court has jurisdiction, it does not limit the scope of the Environmental Court's *authority* over such matters. The "arising under" language in the jurisdictional grant does *not* limit the Environmental Court's authority to consider constitutional claims that might arise within the context of an action subject to 24 V.S.A. chapter 117.

Moreover, many other statutory provisions indicate that the Environmental Division has the authority to consider constitutional claims and defenses. 24 V.S.A. § 4472(b) expressly provides that an interested person may "raise[]" constitutional issues in the "Environmental Division." 24 V.S.A § 4472(b). Moreover, 24 V.S.A. § 4472(a) provides that an environmental court hearing a permitting appeal "shall have and may exercise all powers and authorities of a Superior Court." 24 V.S.A. § 4472(a).[16] This language places no limitations on the scope of the environmental court's "powers [or] authorities" when considering matters "arising under 24 V.S.A. chapter 117" and indicates instead that the environmental court would have the same ability to consider any constitutional claim that a Vermont superior court would have, provided the constitutional issue "ar[ose] under" the municipal planning statutes over which the

_____

201 and 220; (2) jurisdiction of matters arising under 24 V.S.A. chapter 61, subchapter 12 and chapter 117; and (3) original jurisdiction to revoke permits under 10 V.S.A. chapter 151."

[16] This statutory language completely rebuts the Appellant's attempt to distinguish *Hinsdale v Village of Essex Junction*, 153 Vt. 618, 572 A.2d 925 (1990) as distinguishable because Hinsdale was decide prior to the "expansion of the Environmental Division," and, at that time, § 4472(a) required zoning appeals to be "made to the superior court." *See* Appellant's Brief at 41–42 (making argument). If the superior court had the authority to consider constitutional claims in *Hinsdale*, and the Environmental Division "shall have and may exercise all powers and authorities of a Superior Court," 24 V.S.A. § 4472(a), then the Environmental Division has the authority to consider constitutional claims that the superior court had in *Hinsdale*.

environmental court has jurisdiction. Finally, this plain reading of § 4472 is confirmed by the Legislative history of the Act that added this language, which explains that the Act "allows the environmental court to address constitutional issues that arise in the course of hearing a matter before the court." H.175, Act. No. 115, Gen. Assembly (Vt. 2004), Summary.[17]

And indeed, Vermont's environmental courts have repeatedly considered claims from litigants alleging constitutional violations of the very sort asserted here by the Appellant.[18] There is no support in Vermont statute or case law for the Appellant's claim that he would not have been able to have his claims of constitutional violations heard and resolved in the Vermont Environmental Court, if he had properly raised them in the context of an appeal of NOV2.

Furthermore, Vermont's Environmental Courts do not include procedural limitations that might call into question whether a constitutional claimant has received adequate due process protections. The proceedings before the Environmental Court include access to discovery procedures and evidentiary hearings and appellants are "entitled to a de novo trial" before the environmental court. 24 V.S.A. § 4472(a). Accordingly, the Vermont Environmental Court does

---

[17] Available online at
http://www.leg.state.vt.us/docs/legdoc.cfm?URL=/docs/2004/acts/ACT115SUM.HTM&Session=2004

[18] *E.g., In re Letourneau*, 168 Vt. 539, 548-550, 726 A.2d 31, 38-39 (1998) (equal protection, selective enforcement); *Down River Invs.*, 2021 Vt. Super. LEXIS 88, *15-17 (Vt. Env. Ct. 2021) (equal protection, selective enforcement); *In re Valois Airplane Storage Application*, 2009 Vt. Envtl. LEXIS 14, *9-10 (Vt. Env. Ct. 2009) ((equal protection, selective enforcement); *Town of Charlotte v. Aube-Hinsdale*, 2001 Vt. Envtl. LEXIS 49, *3 (Vt. Env. Ct. 2001) (equal protection, selective enforcement and due process); *Woodstock v. Shaw*, 2001 Vt. Envtl. LEXIS 77, *5-7 (Vt. Env. Ct. 2001) (equal protection, selective enforcement and due process); *In re Appeal of R.L. Vallee*, 1999 Vt. Envtl. LEXIS 2, *6-7 (Vt. Env. Ct. 1999) (equal protection, selective enforcement); *see also Lovell*, 2005 Vt. Envtl. LEXIS 22, *9-10 (Vt. Env. Ct. 2005) ("[W]e note that under 24 V.S.A. §4472(b), as amended in 2004, such a constitutional claim [i.e., an equal protection claim] may be . . . addressed in this court in the context of an appropriate case, such as an appeal from a permit denial.").

21

not present procedural limitations that might call into question the sufficiency of the judicial review available to Mr. Banyai.

The Appellant has not identified any error in the district court determination that, as required by the *Rooker-Feldman* doctrine and *McKithen*, "(1) the plaintiff lost in state court" and "(4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen,* 626 F.3d at 154 (citing *McKithen,* 481 F.3d at 97). Accordingly, this Court should affirm the district court's determinations on these issues.

## IV. The Vermont courts did not "ratify" any alleged conduct and Mr. Banyai complains of injuries "caused by" the Vermont state court judgments.

For *Rooker-Feldman* to apply, a plaintiff must complain "of injuries caused by the state court judgment." *McKithen*, 626 F.3d at 154. In concluding that this requirement was met, the district court examined all four of Mr. Banyai's claims in detail and determined that the selective enforcement, "class of one," and substantive due process claims were all barred by *Rooker-Feldman* because Mr. Banyai "complains of injuries caused by the state court judgments." A270–A277.

The Appellant's Brief does *not* challenge or review the district court's analysis of the claims or identify any specific error in the district court's reasoning with respect to whether his injuries were "caused by" the state court judgments. *Compare* A270–A277 (district court's analysis of plaintiff's claims) *with* Appellant's Brief at 31–36 (arguing that the "State court judgments were not the source of Appellant's injuries"). Instead, the Appellant attempts to avoid application of *Rooker-Feldman* by arguing that the district court ignored the following statement of applicable law:

> Our court has further determined that *Rooker-Feldman* does not bar claims based on an opponent's misconduct that precedes the state court proceeding, if the "plaintiffs' alleged injuries were merely ratified by the state-court judgments rather than caused by them."

*Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) (citing *Sung Cho v. City of New York*, 910 F.3d 639, 641 (2d Cir. 2018).

The Appellant attempts to apply this law to his own claims, arguing that he complains of Town conduct that "preceded commencement of the state court litigations" and that the state court merely "ratified" the Town's illegal conduct. Appellant's Brief at 31–33. Specifically, the Appellant argues that the Town, "[m]otivated by its intent to harass and punish Appellant for his dispute with Town officials, e.g. affair with a Town official's brother's wife, and animus toward his purported extremist beliefs . . . purposely sought to cause the deconstruction and removal of Appellant's protected property interests contrary to clearly defined law" and "the Environmental Division surprisingly 'ratified' and 'acquiesced' in the Town's ultra vires methods of enforcement." *Id.* at 35.

The district court expressly considered and rejected this argument, A273–A274, examining the allegations in the Complaint and noting that the Complaint specifically "identifies Judge Durkin's and the Town's 'expansion' of NOV2, which occurred once the state-court action was commenced, as the source of his injuries" for the selective enforcement claim. A273; *see also* A192 (Amended Complaint at ¶ 86) ("In furtherance of their discriminatory intent, Defendants greatly sought to expand the scope of NOV2 to include those structures that were either inapplicable to NOV2 or exempt under Vermont law"). The Appellant's Brief does not directly address or criticize the district court's reasoning on this point, opting instead merely to re-assert without argument that the environmental court "merely ratified" that Town's illegal conduct. Mr. Banyai is essentially saying the district court reached the wrong conclusion, but is not explaining how the district court erred.

23

In any event, the Vermont courts did *not* "ratify" the defendants' conduct as contemplated by *Sung Cho* or *Dorce*.

In *Sung Cho*, the City of New York brought eviction proceedings against the federal plaintiffs in state court, but prior to any hearing in the matter, the plaintiffs chose to avoid litigation by entering into a settlement agreement with the City, and the parties submitted the settlement agreement to the state court prior to hearing. *Sung Cho v. City of New York*, 910 F.3d 639, 641 (2d Cir. 2018). The state court "so-ordered" the proposed settlement agreement and dismissed the case. *Sung Cho*, 910 F.3d at 643. No hearing was held, no evidence was taken, and the court was not called upon to impose any involuntary judgment upon either of the parties. *Id*.

The plaintiffs brought a separate federal court class action, on behalf of themselves and other similarly situated persons, alleging that the City's settlement agreements unconstitutionally required the plaintiffs to waive their constitutional rights. *Id*. at 643. Specifically, the plaintiffs argued that the injuries they complained of were not caused by the state court's "so-ordered" dismissal because (1) the City unconstitutionally coerced the plaintiffs into signing the agreements and (2) the agreements became a binding contract between the parties when they were signed, irrespective of whether the court approved the settlement or not. *Id*. at 648-649. This Court agreed, and held that, under those facts, the state court had merely "ratified" the settlement agreement rather than substantively imposing an order upon the parties and that the injuries complained of in the federal complaint were therefore not "caused by" the state court order approving the settlement and dismissing the case. *Id*.

No such facts are obtain here. Mr. Banyai challenged a settlement agreement "ratified" by the environmental court without hearing. Instead, he seeks to overturn the considered judgments of two Vermont state courts, asking the district court to review and reject those

judgments by "terminating" the environmental court's "permanent injunction . . . prohibiting any firearms related activity"; by "revoking NOV2"; by "reinstating the June 2018 Permit" and by "enjoining and restraining" the Town of Pawlet and Judge Durkin "from enforcing all prior, current or future orders requiring the deconstruction and removal of Plaintiff's gun ranges, berms, and farm structures." A200. Moreover, to accomplish the termination, revocation, reinstatement, enjoining, and restraint that Mr. Banyai seeks, the federal courts will need to review and reject the judgment of the Vermont Supreme Court, which affirmed the environmental court's rulings following the March 5, 2021 Merits hearing. Far from "ratifying" anything, the court that issued the injunctions and orders Mr. Banyai now seeks to overturn, imposed those orders on Mr. Banyai involuntarily and only after the court held hearings, received evidence, heard testimony, considered competing legal arguments, and ruled for and against the parties. *Rooker-Feldman* does not allow federal courts to "'overturn,' *Exxon Mobil*, 544 U.S. at 291-92, 'declare[] null and void,' *Rooker*, 263 U.S. at 413, or 'reverse or modify,' *id.* at 416, state court decisions." *Dorce v. City of New York*, 2 F.4th 82, 107 (2d Cir. 2021) (citations in original). This is emphatically *not* a ratification case of the sort envisioned by *Sung Cho*.

Dorce v. City of New York, 2 F.4th 82, 108 (2d Cir. 2021) does not support Mr. Banyai's ratification argument either. In *Dorce*, this Court held that *Rooker-Feldman* would not bar the plaintiffs' equal protection claims, due process claims, or takings claims to the extent that the plaintiffs did *not* seek to undo the related state court judgments and "to the extent that for each of those claims, they seek only the value of their lost property in excess of the amount owed in taxes." *Dorce*, 2 F.4th at 108. To the extent the *Dorce* plaintiffs sought to undo the relevant state court judgments, this Court held their claims were barred by *Rooker Feldman* "because in order

to prevail, Plaintiffs would need to persuade the district court that the state court had erred." *Dorce*, 2 F.4th at 105

Here, Mr. Banyai seeks to revoke, reverse, and/or terminate the Vermont state court determinations that Mr. Banyai currently holds a valid zoning permit for only one building on his Property and that the unpermitted buildings located on his Property must be removed and the unpermitted uses must cease until such time as a proper permit is obtained. The Complaint repeatedly references the state court orders as the source of his injuries. In support of his selective enforcement claim and his due process claim, Mr. Banyai contends that the Defendants—meaning both Judge Durkin and the Town of Pawlet—"failed to interpret NOV2 in good faith", "greatly sought to expand the scope of NOV2 to include those structures that were either inapplicable to NOV2 or exempt under Vermont law", "sought to compel Plaintiff, under threat of incarceration, to remove" his unpermitted structures, and "sought to compel Plaintiff under the threat of incarceration to remove various farming structures." A190–A196. All of these alleged "injuries" reference substantive legal rulings made by Vermont courts in connection with Mr. Banyai's Property, placing this dispute far beyond the scope of *Sung Cho* or *Dorce*.

Moreover, the rule set forth in *Sung Cho* requires a plaintiff to show not only that the state court "ratified" a defendant's illegal conduct, but also that the conduct at issue *preceded* the state court proceedings. In support of his argument that he complains of Town conduct that preceded the NOV2 enforcement proceedings, Mr. Banyai cites the allegations on pages 15–16 of his Amended Complaint and argues that these allegations demonstrate that his injuries

> occurred when the Town agreed to selectively target Appellant for an improper purpose and *thereafter*, caused a zoning enforcement proceeding to commence against him in furtherance of such intent.

*Id.* at 32.

The allegations specifically cited in the Appellant's Brief do not allege that relevant town officials targeted Appellant for an improper purpose. The cited allegations allege that members of the Hulett family, including Bruce Hulett and Dick Hulett, dislike Mr. Banyai because the "Huletts and other residents believe Rebecca Hulett [Bruce Hulett's ex-wife] commenced her romantic relationship with [Mr. Banyai] while she was still married to Bruce Hulett." A186 at ¶ 63. The allegations assert that Ray and Mandy Mosher-Duquette "and other neighboring properties loyal to the Huletts, also did not like Plaintiff because of his perceived political beliefs." *Id.* at ¶ 64. The allegations also assert that Mr. Banyai's neighbors, John Davis and Valerie Davis, joined together, "in furtherance of their hatred" for Mr. Banyai "formed the "Briar Hill/Warren Switch Group," a group whose stated goal is to oppose Plaintiff." These allegations do not show that Mr. Banyai bases the claims in his Amended Complaint on Town conduct that preceded the enforcement of NOV2.

*None* of the individuals named in the cited allegations is alleged to be a town official at times relevant to the claims asserted in the Complaint. Valerie Davis is alleged to be a "former postmaster for the town," A177 at ¶18(e), and Dick Hulett is alleged to have "served as a Pawlet Select Board Member for 24 years," *id.* at ¶ 18(a), but the Complaint does *not* allege that either Ms. Davis or Mr. Hulett served as town officials at a time relevant to Mr. Banyai's claims. Similarly, Mr. Banyai alleges that, as of July 14, 2023, the date the Amended Complaint was filed, Richard Hulett "is . . . a Pawlet Selectboard Member" and Ray Duquette and Mandy Mosher-Duquette "serve on Pawlet's Board of Civil Authority," but the Amended Complaint does *not* allege that Richard Hulett, Ray Duquette or Mandy Mosher-Duquette were town officials at a time relevant to Mr. Banyai's claims.

Furthermore, to support a plausible § 1983 claim against the Town based on official misconduct of town officials, Mr. Banyai must identify the town officials involved and show how the conduct of those officials caused Mr. Banyai's injuries. *See, e.g., Provost v. City of Newburgh*, 262 F.3d 146, 154-156 (2d Cir. 2001) (discussing participation requirement in § 1983 claims). The only material allegations in the Amended Complaint concerning specific conduct by town officials involve Town efforts to enforce NOV2 and obtain court orders governing his use of the property.[19] NOV2 was issued on November 29, 2019 by Pawlet Zoning Administrator Hal Wilkins, pursuant to his authority under Title 24, Ch. 117. A181–A182 at ¶ 41. The action to enforce NOV2 was filed in September 2019. Under 24 V.S.A. § 4452, enforcement actions are brought by "the administrative officer in the name of the municipality"—again, in this instance, Hal Wilkins.[20] In short, the only town official who took any official action with respect to the issuance or enforcement of NOV2 is Hal Wilkins. The Amended Complaint makes no allegations regarding Hal Wilkins other than to note that he issued NOV2. A181–A182 at ¶ 41.

The individuals identified in the allegations cited in the Appellant's Brief are not alleged to have held any municipal authority or exercised any official control over the issuance or enforcement of NOV2. The lurid story of alleged hatred based on rumors of Mr. Banyai's participation in an extramarital affair and the supposed corruption among town residents who formerly held town office is simply insufficient to plausibly demonstrate that Mr. Banyai bases his constitutional claims on Town conduct that preceded the state court action. There are no specific allegations linking the supposed animus of his neighbors and former town officials to

---

[19] The Complaint also references ZA Mach's issuance of NOV1 and the June 2018 Permit, A11–A12 at ¶¶ 31–32, but the constitutional claims in the Complaint are not based on this conduct.

[20] The Pawlet Selectboard in September 2019 was comprised of Bob Jones, Mike Beecher, Ed Cleveland, Chuck Weeden and John Malcolm.

Mr. Wilkins's decision to issue and subsequent enforcement of NOV2. The Amended Complaint does not complain of injuries preceding the state court proceedings.

In a final argument on this issue, the Appellant contends that this Court should look beyond the fact that his "substantive due process claim mirrors claims in the state court action." Appellant's Brief at 33. In support of this contention, Mr. Banyai argues that the Vermont Environmental Court's rejection of Mr. Banyai's asserted defenses regarding the proper scope of NOV2—including arguments that his use of the property as a firing range was a "de minimus use of private property ... not subject to zoning regulations" and that some of the buildings on his property were "farming structures" that were "also exempt from zoning regulations"— "enable[ed] the Town to unilaterally determine the meaning of NOV2 and the means to achieve compliance." Appellant's Brief at 34–35. This argument—that, because the court ruled against Mr. Banyai with respect to his asserted defenses, the Town somehow gained unilateral control over his legal fate, which the state court simply ratified—is specious. Mr. Banyai asserted defenses and the Vermont state court, applying Vermont law, determined that those defenses did not apply. The Vermont state court then held a hearing and issued its own order regarding the scope of NOV2 and how NOV2 would be enforced. The Town exercised no "discretion" and exercised no power over the court any more than any other prevailing litigant standing before a court does. The parties presented facts, law and argument to the environmental court regarding the meaning and scope of NOV2. Mr. Banyai lost before the state court, and the state court ruled in the Town's favor. None of this activity represents actionable constitutional violations, and all of it falls within the purview of *Rooker-Feldman*.

Because Mr. Banyai has failed to identify error in the district court's reasoning or conclusions, this Court should affirm the district court's holding that *Rooker-Feldman* bars the

district court form considering Mr. Banyai's selective enforcement, class of one, and due process claims.

**V.      The claims asserted in the Complaint are barred by Vermont's claim preclusion doctrine.**

As a separate and independent ground for dismissal of the Complaint, the district court also found that the claims asserted in the Complaint are barred by Vermont's *res judicata* doctrine of claim preclusion. A277–A284.

Under Vermont law,

> claim preclusion will preclude a claim from being litigated if (1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding.

*Iannarone v. Limoggio*, 2011 VT 91, ¶15, 190 Vt. 272, 279 (citation and quotation marks omitted).

> The doctrine does not require that the claims were actually litigated in the prior proceeding; rather, it applies to claims that were or should have been litigated in the prior proceeding. For example, res judicata applies to both affirmative defenses that could have been raised before and compulsory counterclaims that should have been raised before, but not to permissive counterclaims.

*In re Tariff Filing of Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, ¶20, 769 A.2d 668 (internal citations omitted); *also Faulkner v. Caledonia County Fair Ass'n*, 2004 VT 123, ¶8, 178 Vt. 51, 54, 869 A.2d 103.

The trial court noted that "Plaintiff does not dispute that this action meets the first and second elements of claim preclusion: that this case involves several final judgments on the merits in past state litigation," but considered Mr. Banyai's argument that "he did not and could not have litigated his 42 U.S.C. § 1983 claims in the prior action, and therefore claim preclusion does not bar his claims." A278.

The district court found that Mr. Banyai could have brought his claims in Vermont environmental court, reasoning:

> Each of Plaintiff's four claims against the town raise a constitutional attack to the application of the Town's Bylaws to his property. He alleges selective enforcement and differential treatment in violation of the Equal Protection Clause, deprivation of his property interests in violation of the Due Process Clause of the Fourteenth Amendment, and denial of his right to operate a shooting range on his property in violation of the Second Amendment. Each of these claims are properly raised in the Environmental Court on an appeal of the issuance of the notice of violation against him, which he chose not to pursue. [citing cases]. Accordingly, Plaintiff could and should have litigated his present claims in the Environmental Court in an appeal of the issuance of NOV2 or during the Town's enforcement action against him.

A285–A286.

This conclusion is correct. Crucially, Vermont claim preclusion law does not require a claim to have been actually litigated for claim preclusion to apply; rather, claim preclusion applies "to both affirmative defenses that could have been raised before and compulsory counterclaims that should have been raised before." *In re Tariff Filing of Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 20, 769 A.2d 668, 673 (2001). Mr. Banyai's constitutional claims are both affirmative defenses and compulsory counterclaims arising from the issuance and enforcement of NOV2. Mr. Banyai, in fact, did assert the constitutional claims he now brings in the state proceedings, but he did so poorly. As described above, throughout the state court litigation, Mr. Banyai argued that NOV2 should not be interpreted to invalidate the June 2018 permit, to prohibit operation of firing ranges on his property, or to regulate what he called "farming structures" A59–A60 n.6.  Moreover, he consistently contended that, by issuing NOV2 and enforcing it, the Town was violating his rights, exhibiting bias against him. All of these claims and defenses mirror the claims he now asserts. However, crucially, Mr. Banyai missed his opportunity to effectively assert these defenses and claims because he failed to appeal key decisions at the proper time or, when he did assert these claims and defenses, he did so in only a

31

limited fashion, refusing to engage in the judicial process and providing only vague and elliptical pronouncements with respect to his defenses and claims. These are exactly the kinds of claims that Vermont claim preclusion bars.

The Vermont Supreme Court addressed this issue directly in *Hinsdale v Village of Essex Junction*, 153 Vt. 618, 572 A.2d 925 (1990), a case that has many factual similarities to the present case. In *Hinsdale*, a Vermont Zoning Board of Adjustment ("ZBA") denied a zoning permit, and the applicant applied for a variance, which was also denied by the ZBA. The applicant did not appeal either of these decisions. Instead, he unilaterally decided that the notice for these two decisions had not been mailed to him within the time required by statute and proceeded to implement the use for which he had applied, relying on a provision of Vermont law that stated that an application will be deemed approved if a decision is not rendered within 45 days after hearings are complete. The town threatened to bring a criminal action based on the violation of the zoning ordinance. *Id*. at 620-621.

The applicant filed a declaratory action to resolve the dispute. In that declaratory action, the applicant asserted a number of defenses and claims, including arguments that he was entitled to "pre-existing-nonconforming use status as a matter of law," that the applicable zoning ordinance "denied him all practical use of his property," that the ordinance was "unconstitutional as applied to him," and that the town had made his property subservient to public uses without a showing of necessity in violation of the Vermont Constitution. *Id*. at 625–628. With respect to all of these arguments, the Vermont Supreme Court held that the plaintiff would have had the opportunity to assert them, if he had timely and properly appealed the ZBA's decisions, but having failed to do so, claim preclusion barred his attempt to assert them in a separate action. *Id*.

*Hinsdale* is on-point both factually and legally here. Like the plaintiff in *Hinsdale*, Mr.

Banyai failed to appeal NOV2 and now faces the *res judicata* consequences of that decision.

Like the constitutional claims in *Hinsdale*, the constitutional claims asserted in the Amended

Complaint are barred because Mr. Banyai could have raised those claims and defenses in an

appeal of NOV2 and he failed to do so.

Moreover, we do not need to rely on *Hinsdale*'s general rule to understand how Vermont

law would apply to these constitutional claims. The Vermont Supreme Court has already

rebuffed other constitutional claims already asserted by Mr. Banyai in the state court

proceedings. The Vermont Supreme Court held that, because Mr. Banyai did not appeal NOV2,

> NOV2 is final and binding under § 4472. It follows that landowner is prevented
> from contesting any of the violations in NOV2. Consequently, as stated in NOV2,
> landowner has only one valid permit, the October 2018 Permit for a
> garage/residential apartment, and his current school improvements and uses of his
> property are violations of the Bylaws; by failing to appeal NOV2, he is precluded
> from arguing his uses detailed in the notice of violation are either not subject to
> the Bylaws or in conformance with the Bylaws, and from relying on the June
> 2018 Permit.

*Town of Pawlet v. Banyai*, 2022 VT 4, ¶17, 216 Vt. 189, 198, 274 A.3d 23, 30. The Vermont

Supreme Court also rejected constitutional claims on the same ground, concluding "Landowner

was obligated to bring any challenge to NOV2 through an appeal and having failed to do so, he

is barred from challenging its validity in this enforcement action." *Banyai*, 2022 VT 4, ¶21, 216

Vt. 189, 200, 274 A.3d 23, 32. If Mr. Banyai had presented the claims asserted in the Amended

Complaint to the Vermont Supreme Court as he could and should have done, they would have

been claim precluded as well, on the same reasoning.

Mr. Banyai also argues that his claims do not meet the transactional test that Vermont

applies in claim preclusion cases. Appellant's Brief at 37–40. In support of this argument, Mr.

Banyai asserts that, because he alleges that issuance of NOV2 and the action to enforce NOV2

was motivated by an improper intent, proof of his claims will not require the same evidence. *Id.* However, this argument grotesquely distorts both the claims asserted in the Complaint and Vermont's transactional test.

First, the Complaint makes the issuance of NOV2 and the state court orders interpreting and enforcing NOV2 the centerpiece of the Complaint. A13–A56, at ¶¶ 37–56. All of Mr. Banyai's claims of constitutional violations rely on demonstrating that NOV2 was unlawfully issued and that the state court's interpretation and enforcement of NOV2 was unlawful. If the issuance of NOV2 was not unlawful and the state court's interpretation and enforcement of NOV2 was not unlawful, then Mr. Banyai simply has no constitutional claim, because he cannot demonstrate a violation of his constitutional rights. It is simply not a violation of the U.S. Constitution to properly apply the law, no matter how animus a town official may hold towards a citizen.

Second, as already discussed, the proposed amendments to the Complaint do not allege any specific conduct by Town officials. Accordingly, regardless of whether those proposed amendments involve allegations pre-dating the issuance of NOV2, they add nothing material to the claims already asserted in the Complaint, namely that the Town of Pawlet and Judge Durkin improperly expanded the scope of NOV2 and improperly sought to "compel [Mr. Banyai] under threat of incarceration" to remove his unpermitted buildings and structures, thereby selectively enforcing the Pawlet Bylaws, consigning Mr. Banyai to a discriminatory "class of one," violating a federally protected right, and improperly limiting Mr. Banyai's Second Amendment rights. A18–A23. Proof of these claims will focus primarily on the events involving issuance of the NOV2 and the state court proceedings, not events pre-dating NOV2.

34

Third, Vermont's transactional test is not as narrow as Mr. Banyai argues and will still bar Mr. Banyai's claims, even though they may involve additional facts, claims, or legal theories. Vermont courts

> determine the scope of a "transaction" by "'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* ¶ 13 (quoting Restatement (Second) § 24(2)). Moreover, even if the claims do not constitute the same transaction because there is insufficient overlap, the second action may still be precluded if it "'stems from the same transaction.'" *Id.* (quoting Restatement (Second) § 24 cmt. b). Thus, claim preclusion may apply even though the second action relies on different evidence or legal theories, or seeks relief not requested in the first action. *Id.* ¶ 14 (citing Restatement (Second) § 25).

*Sutton v. Purzycki*, 2022 VT 56, ¶23, 295 A.3d 377; *also Faulkner v. Caledonia County Fair Ass'n*, 2004 VT 123, ¶13-¶14, 178 Vt. 51, 57, 869 A.2d 103, 109 (discussing test and noting that claim preclusion may bar a "second lawsuit arising out of the same transaction as a prior lawsuit even where the second action will include 'evidence or grounds or theories of the case not presented in the first action, or . . . remedies or forms of relief not demanded in the first action.'"). This law shows that the circumscribed interpretation in the Appellant's Brief is misguided.

Moreover, as discussed extensively above, litigation of Mr. Banyai's constitutional claims will cover the same transactional ground as could and should have been covered in a timely appeal of NOV2 and as was covered in the state court action enforcing NOV2. Moreover, Mr. Banyai's "motivation" here in federal court is the same as it was in state court—attempting to avoid and shake off the limitations on the use of his Property imposed by NOV2, by the Merits Decision, and by the Contempt Decision. Mr. Banyai's attempt to temporally restrict his constitutional claims and constrict the reach of Vermont's claim preclusion doctrine should be

rejected, and this Court should affirm the district court's determination that Vermont's claim preclusion doctrine bars these claims.

Mr. Banyai asserts a few smaller, less developed, arguments in opposition to claim preclusion, none of which holds much weight.

With respect to his Second Amendment claim, Mr. Banyai argues that the Environmental Court would not have been able to consider that claim if he had raised it in the Environmental Court. Appellant's Brief at 42-43. This argument must fail for the reasons discussed above regarding the ability of the Environmental Division to hear, consider and resolve constitutional claims that arise in matters falling within the court's jurisdiction.

Mr. Banyai also cites *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002) and argues that the Supreme Court decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) constitutes an "intervening change of controlling law" that would justify the district court's "departure" from applying Vermont claim preclusion law. Appellant's Brief at 43–44. *Quintieri* involved this Court's consideration of a departure from the "law of the case doctrine" within the context of a limited remand from this Court to the district court in the same proceeding. *See Quintieri*, 306 F.3d at 1229-1231 (discussing issue). *Quintieri* does not hold that a change in intervening law would allow a district court to depart from the requirement of the "Full Faith and Credit Act, 28 U.S.C. § 1738" that "the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 S. Ct. 1517, 1527 (2005).

In any event, *Bruen* does not represent a change in intervening law within the context of Mr. Banyai's claims. *District of Columbia v. Heller*, 554 U. S. 570, 128 S. Ct. 2783 (2008), and

*McDonald v. Chicago*, 561 U. S. 742, 130 S. Ct. 3020 (2010) had already "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 142 S. Ct. at 2122. Mr. Banyai did not need *Bruen* to tell him that the Second Amendment might have been a basis for appealing NOV1 or NOV2. He could and should have asserted a Second Amendment claim in a timely appeal of NOV1 or NOV2. He did not choose to do so and Vermont claim preclusion law now precludes his claim.

Mr. Banyai's reliance on *Littlefield v. Town of Colchester*, 150 Vt. 249, 552 A.2d 785 (1988) is also misguided. Although the Appellant's Brief emphasizes *Littlefield*'s observation that a plaintiff need not bring an appeal under § 4472 before pursuing a § 1983 action for a constitutional violation, the Brief fails to come to grips with the implications of *Littlefield*'s holding, namely, that a plaintiff's voluntary dismissal of a § 4472 appeal would bar a § 1983 claim related to that appeal because "plaintiff can no longer allege -- by virtue of his voluntary dismissal with prejudice -- the injury necessary to make out a damages claim under 42 U.S.C. § 1983." *Littlefield*, 150 Vt. at 251, 552 A.2d at 786 (1988). Mr. Banyai's difficulty here is that he has chosen to file these § 1983 claims after Vermont state courts have reached a final judgment with respect to his attempt to challenge the scope and enforceability of NOV2. If a voluntary dismissal in *Littlefield* was sufficiently "final" to bar § 1983 claims that might otherwise have been brought in a § 4472 appeal, then the Environmental Division's Merits Decision followed by an appeal to the Vermont Supreme Court is more than final enough to preclude § 1983 claims that could—or should—have been raised by Mr. Banyai previously.

Mr. Banyai's attempt to assert a "reverse" exhaustion argument based on *Steffel v. Thompson*, 415 U.S. 452, 472-473, 94 S. Ct. 1209, 1222-1223 (1974) suffers from a similar

defect. Although *Steffel* notes that § 1983 claims do not require "exhaustion of state judicial or administrative remedies" before bringing a claim, *Steffel*, 415 U.S. at 472, this does not mean that § 1983 claims automatically avoid the preclusive effects of state law judgments. Where, as here, a state court judgment would preclude a plaintiff from asserting § 1983 claims, those claims will be barred. This is all the district court has done—apply Vermont claim preclusion law to plaintiff's constitutional claims. The district court did not apply any "exhaustion" requirement to Mr. Banyai's claims; the district court's opinion does not use the word "exhaust" and does not discuss that concept. Mr. Banyai's so-called "reverse exhaustion" argument is completely irrelevant to this appeal.

For all the reasons provided above, the Appellant has failed to identify any error in the district court's determination that Vermont claim preclusion bars the constitutional claims asserted in the Complaint.

## VI. The *Erie* doctrine applies only in diversity cases and does not bring Vt. R. Civ. P. 60(b) within the scope of the present action.

The Appellant argued before the district court that Vt. R. Civ. P. 60(b) would permit him to evade Vermont's doctrine of claim preclusion and provide a basis for asserting his claims, even if claim preclusion would otherwise apply. Mr. Banyai repeats those arguments here. Appellant's Brief at 47–52.

The district court correctly held that the Vermont Rules of Civil Procedure, including Rule 60(b) "have no application" in the district court because Vermont's civil procedure rules only apply in Vermont Courts. A283 (citing Vt. R. Civ. P. 1). In response, Mr. Banyai argues that Vt. R. Civ. P. 60(b) is "state substantive law" that must be applied in federal district court under the rule announced by the U.S. Supreme Court in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Appellant's Brief at 47.

38

Mr. Banyai did not raise this argument before the trial court and raises it here on appeal for the first time. Accordingly, this Court should reject the argument outright, based on this Court's longstanding practice of declining to consider an issue or argument "raised for the first time on appeal." *In re Nortel Networks Corp. Sec. Litig.,* 539 F.3d 129, 132-133 (2d Cir. 2008); also, e.g., *Caiola v. Citibank, N.A.*, 295 F.3d 312, 328 (2d Cir. 2002) ("we conclude that the issue was not properly raised below and, because there is no manifest injustice in our declining to hear this argument in the first instance here, we choose not to consider it."); *Anderson v. Credit One Bank, N.A. (In re Anderson)*, 884 F.3d 382, 388 (2d Cir. 2018) ("It is well settled that arguments not presented to the district court are considered waived and generally will not be considered for the first time on appeal.") (quoting *Anderson Group, LLC v. City of Saratoga Springs*, 805 F.3d 34, 50 (2d Cir. 2015)).

Even if this Court were willing to consider the argument, it is a non-starter because the *Erie* doctrine only applies when a federal district court sits in diversity applying state law; in cases involving federal questions, state law is inapplicable. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938). Indeed, all of the cases cited in Mr. Banyai's Brief in support of his Erie argument involve federal courts sitting in diversity.[21]

Mr. Banyai claims federal question jurisdiction and asserts only federal claims. All of the parties are from Vermont. Mr. Banyai asserts claims against the Town for violations of the U.S. Constitution. The *Erie* doctrine therefore has no application here and cannot serve as a basis for applying a Vermont procedural rule that, by its own terms, applies only in Vermont courts.

---

[21] *Hanna v. Plumer*, 380 U.S. 460, 461, 85 S. Ct. 1136, 1138 (1965); *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 894 (2d Cir. 2019); *Argentina v. Emery World Wide Delivery Corp.,* 167 F.R.D. 359, 361 (E.D.N.Y. 1996).

The Appellant also argues that the district court "erred" in relying on *Cody v. Estate of Cody*, 134 Vt. 113, 114 (1976) to conclude "that even if Rule 60(b) applies, it does not permit the Appellant to evade the preclusive effect of res judicata." Appellant's Brief at 50. To demonstrate this error, the Appellant attempts to distinguish *Cody* from the present case on the facts. *Id*. at 50–52.

However, the Appellant's arguments miss the mark. Even if *Cody* stood for the proposition that a litigant may evade *res judicata* principles under Vermont law by bringing an independent action under Vt. R. Civ. P. 60(b), the Appellant has not done so. The Verified Complaint and the First Amended Verified Complaint do not refer to Vt. R. Civ. P. 60(b) and do not assert a claim "on the basis of the provisions of V.R.C.P. 60(b)" as *Cody* requires. *See Cody v. Estate of Cody*, 134 Vt. 113, 114, 352 A.2d 684, 685 (1976) ("However, an independent action in the context of this rule . . . contemplates different grounds or different relief on the basis of the provisions of V.R.C.P. 60(b).").

Moreover, as already noted above, the express language of the Vermont Rules limits their application to Vermont courts.[22] Therefore, any request for relief from a Vermont court judgment under Vt. R. Civ. P. 60(b) should be filed in a Vermont court, not a federal court. The Appellants have cited no case demonstrating that a litigant who lost in a judgment issued by a Vermont court would be free to bring an independent action in federal court to have that Vermont state court judgment set aside. As discussed above, there is plenty of *Rooker-Feldman* case law demonstrating that a litigant wishing to do this must appeal directly to the U.S. Supreme Court, not a federal district court.

---

[22] *See* V.R.C.P. Rule 1 (identifying the courts within which the Rules apply); Vt. R. Civ. P. 83 (defining terms related to "courts" by reference to Vermont statutes establishing Vermont courts).

**VII.    Amendment of the Complaint would be futile.**

The district court denied Mr. Banyai's motion to amend because "Plaintiff's request for leave to amend his complaint has proven futile" and because Mr. Banyai conceded in his Motion to Amend that that the "proposed amendment does not directly affect the contents of the Town's pending motion to dismiss." A284. The Appellant's Brief argues that he made no such concession and notes that "all the factual contents contained in the amended complaint were included in the opposition." Appellant's Brief at 52. Nowhere, however, in his Opposition to the Town's Motion to Dismiss, or in his Motion to Amend, or in his Appellant's Brief does Mr. Banyai explain why the proposed amendments would not be futile. Nowhere does Mr. Banyai explain why the allegations in the Amended Complaint—which merely add extra (and frequently irrelevant) detail to claims already present in the Complaint—would cure the fact that *Rooker-Feldman* bars his first three claims and that Vermont claim preclusion bar all of his claims. Because Mr. Banyai has not offered any affirmative argument explaining why amendment of his Complaint would not be futile, this Court should affirm the district court's denial of Mr. Banyai's Motion to Amend.

<b>CONCLUSION</b>

The district court correctly held that the Rooker-Feldman doctrine barred Mr. Banyai's equal protection and due process claims and dismissed those claims. On a separate and independent ground for dismissal, the district court correctly concluded that Vermont claim preclusion law bars the claims asserted in the Complaint because those claims arose from the issuance and enforcement of NOV2 and Mr. Banyai could and should have brought these claims within the context of a timely appeal of NOV2. The district court also correctly denied Mr. Banyai's motion to amend his Complaint. the additional allegations did not involve any conduct by specific town officials and merely provided additional detail regarding claims Mr. Banyai had

41

already asserted in the Complaint. Neither his claims nor his requested relief would change as a result of the requested amendment. Accordingly, amendment would be futile.

For the reasons discussed above, Mr. Banyai has failed to demonstrate any error in the district court's analysis, reasoning, or holdings. Accordingly, the Town of Pawlet respectfully requests this Court affirm the district court's dismissal of the Complaint for all the reasons set forth in the district court decision.

Respectfully submitted on this 2nd day of January, 2024.

CARROLL, BOE, PELL & KITE, P.C.

BY: /s/ Kevin L. Kite, Esq.
 Kevin L. Kite, Esquire
 64 Court Street
 Middlebury, VT  05753
 (802) 388-6711
 kkite@64court.com
 *Attorney for Appellee Town of Pawlet*

**CERTIFICATE OF COMPLIANCE**

Counsel for Appellee hereby certifies that the foregoing brief complies with the type-volume set forth in Fed. R. App. P. 32(a)(7)(B) and Local Rule 32.1(a)(4).  Based on the word count tool in Microsoft Word, the number of words in the foregoing brief, excluding the sections excludable under Fed. R. App. P. 32(f), is 13,624.

Respectfully submitted on this 2nd day of January, 2024.

CARROLL, BOE, PELL & KITE, P.C.

BY: /s/ Kevin L. Kite, Esq.
      Kevin L. Kite, Esquire
      (802) 388-6711
      kkite@64court.com